## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| **LARRY RUSSELL GORDON, an individual** | § | |
| **Plaintiff** | § | |
| **v.** | § | **Civil Action No. 1:14-cv-93** |
| **ROBERT RANDOLPH NEUGEBAUER, an individual,** | § | |
| **ABILENE POLICE DEPARTMENT** | § | |
| **CITY OF ABILENE, TEXAS** | § | |
| **BETTY HARDWICK CENTER, a local governmental unit representing Taylor, Jones, Shackelford, Callahan and Stephens counties** | § | |
| **COUNTY OF TAYLOR, TEXAS** | § | |
| **COUNTY OF JONES, TEXAS** | § | |
| **COUNTY OF SHACKELFORD, TEXAS** | § | |
| **COUNTY OF STEPHENS, TEXAS** | § | |
| **COUNTY OF CALLAHAN, TEXAS** | § | |
| **STAN STANDRIDGE, an individual** | § | |
| **ABILENE BEHAVIORAL HEALTH, LLC, DBA ABILENE HOSPITAL PSYCHIATRIC SERVICES, a limited liability company** | § | |
| **JOEY A. JACOBS, an individual** | § | |
| **CHRISTOPHER L. HOWARD, an individual** | § | |
| **DAVID M. DUCKWORTH, an individual** | § | |
| **BRENT TURNER, an individual** | § | |

| | |
|---|---|
| **DANIEL RYAN FRESHOUR, an individual** | § |
| **DUANE C. MILLER, an individual** | § |
| **JOHN DALE CROWLEY, an individual** | § |
| **ACADIA HEALTHCARE COMPANY, INC., a corporation** | § |
| **ABILENE PSYCHIATRIC CENTER ASSOCIATES, LLC** | § |
| **TORI HICKS, an individual** | § |
| **WILLIAM ZIMMERMAN** | § |
| **Defendants** | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Larry Russell Gordon, alleges:

### I.    INTRODUCTORY STATEMENT

1. Plaintiff was wrongfully arrested and committed to a psychiatric facility for a period of six days without cause. Plaintiff seeks monetary damages for the tortious conduct of Defendants that caused Plaintiff's commitment and wrongful seizure. The Defendants conspired to and did suborn false evidence and testimony that led to the unnecessary hospitalization and false imprisonment of Plaintiff.

2. This is a civil action seeking monetary damages against Defendants, Robert Randolph Neugebauer, Abilene Police Department, City of Abilene, Texas, Betty Hardwick Center, County of Taylor, Texas, County of Jones, Texas, County of Shackelford, Texas, County of Stephens, Texas, County of Callahan, Texas, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John Dale Crowley, and Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and William Zimmerman for committing acts, each individually and alone and together and in concert,

under color of law, which deprived Plaintiff the protection of the Constitution and laws; and for refusing or failing to prevent such deprivations and denials to Plaintiff. Plaintiff alleges that Defendants, acting alone and, or, together and, or in concert, unlawfully investigated, coerced, arrested, and caused the detention and prosecution of the Plaintiff, and, or, each of them failed to prevent the unlawful act of the others, in violation of Plaintiff's procedural and due process rights secured under the Constitution, the laws of the United States, and the laws of the State of Texas.

## II.   JURISDICTION AND VENUE

3.  This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3) providing for jurisdiction in this Court of suits authorized by 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law, pursuant to 28 U.S.C. § 1367. Venue is proper in the Abilene Division of the Northern District of Texas as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## III.   PARTIES

4.  Plaintiff, Larry Russell Gordon, is an individual who resides at 766 Peach Street, Abilene, Texas 79602.

5.  Defendant, Robert Randolph Neugebauer, is an individual currently serving in the United States House of Representatives and may be served at either his office at 1424 Longworth HOB, Washington, D.C. 20515, his residence at 224 9th Street Southeast, Washington, D.C., or his residence at 8403 Gardner Avenue, Lubbock, Texas 79424.

6.  Defendant, Abilene Police Department is a police department operating under Tex. Loc. Gov't Code Ann. § 341.003 (2013). The Abilene Police Department may be served by serving the City Attorney at 555 Walnut Street, Abilene, Texas 79601.

7.  Defendant, City of Abilene, is a municipality organized under Tex. Loc. Gov't Code Ann. § 5.004 (2013). The City of Abilene may be served by serving the City Attorney at 555 Walnut Street, Abilene, Texas 79601.

8.  Defendant, Betty Hardwick Center, is a local government unit representing Taylor, Jones, Shackelford, Callahan, and Stephens Counties. The Betty Hardwick Center may be served by serving Rita Johnson, the Chair of the Board of Trustees at 2616 South Clack, Abilene, Texas 79606.

9.  Defendant, County of Taylor, Texas, is organized under Title 3 of Tex. Loc. Gov't Code Ann. In accordance with Tex. Loc. Gov't Code Ann. § 89.0041, County Judge Downing Bolls may be served at 300 Oak Street, Abilene, Texas 79602 and the District Attorney of Taylor County, Texas may be served at 400 Oak Street, Abilene, Texas 79602.

10. Defendant, Jones County, Texas, is a local governmental entity and may be served by serving County Judge Dale Spurgin at 100 Courthouse Square, Anson, Texas 79501 and County Attorney Chad Cowan at 1100 12th Street, Anson, Texas 79501.

11. Defendant Shackelford County, Texas is a local government entity and may be served by serving County Judge Ross Montgomery at 225 South Main Street, Albany, Texas 76430 and County Attorney Colton P. Johnson at 225 South Main Street, Albany, Texas 76430.

12. Defendant, Stephens County, Texas is a local government entity and may be served by serving County Judge Gary L. Fuller at 200 West Walker, Breckenridge, Texas 76424 and County Attorney Gary Trammel at 200 West Walker, Breckenridge, Texas 76424.

4

13. Defendant, Callahan County, Texas, is a local government entity and may be served by serving County Judge Roger Corn at 100 West Fourth Street, Baird, Texas 79504 and County Attorney Shane Deel at 100 West Fourth Street, Baird, Texas 79504.

14. Defendant, Stan Standridge, is an individual who serves as the Police chief of Abilene, Texas and may be served at the Abilene Police Department, his place of employment located at 450 Pecan Street, Abilene, Texas 79604.

15. Defendant, Abilene Behavioral Health, LLC, dba Abilene Hospital Psychiatric Services, LLC, is a forfeited entity that is 100 percent owned by Acadia Healthcare Company, Inc. Abilene Behavioral Health is a "person" within the meaning of 18 U.S.C. § 1961(3) and an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Abilene Behavioral Health may be served at 830 Crescent Drive, Suite 610, Franklin, Tennessee 37067.

16. Defendant, Joey A. Jacobs, is a "person" within the meaning of 18 U.S.C. § 1961(3) and who is the President of Abilene Behavioral Health, LLC. Joey A. Jacobs also serves as the Chairman and Chief Executive of Acadia Healthcare Company, Inc., a publicly held corporation. He may be served at 830 Crescent Center Drive, Suite 610, Franklin, Tennessee 37067.

17. Defendant, Christopher L. Howard, is a "person" within the meaning of 18 U.S.C. § 1961(3). Christopher L. Howard is the Vice-President of Abilene Behavioral Health, LLC. Christopher L. Howard also serves as the Executive Vice-President, General Counsel, and Secretary of Acadia Healthcare Company, Inc., a publicly held corporation. He may be served at 830 Crescent Center Drive, Suite 610, Franklin, Tennessee 37067.

18. Defendant, David M. Duckworth, is a "person" within the meaning of 18 U.S.C. § 1961(3). David M. Duckworth is the Chief Financial Officer of Abilene Behavioral Health, LLC, and also serves as the Chief Financial Officer of Acadia Healthcare Company, Inc., a

publicly held corporation. He may be served at 830 Crescent Center Drive, Suite 610, Franklin, Tennessee 37067.

19. Defendant, Brent Turner, is a "person" within the meaning of 18 U.S.C. § 1961(3). Brent Turner is a Vice-President of Abilene Behavioral Health, LLC, and also serves as the President of Acadia Healthcare Company, Inc., a publicly held corporation. He may be served at 830 Crescent Center Drive, Suite 610, Franklin, Tennessee 37067.

20. Defendant, Daniel Ryan Freshour, is a "person" within the meaning of 18 U.S.C. § 1961(3). Daniel Ryan Freshour may be served at 749 Parsons Road, Abilene, Texas 79602.

21. Defendant, Duane Casey Miller, is a "person" within the meaning of 18 U.S.C. § 1961(3). Duane Casey Miller, who may be served at 1301 South Leggett Drive, Abilene, Texas 79605.

22. Defendant, John Dale Crowley, is a "person" within the meaning of 18 U.S.C. § 1961(3). John Dale Crowley may be served at 3041 Champion Circle, San Angelo, Texas 76904.

23. Defendant, Acadia Healthcare Company, Inc., is a publicly-held Delaware Corporation registered with the Securities and Exchange Commission and publicly traded on NASDAQ under the trading symbol of ACHC.O. Acadia Healthcare Company, Inc. is a "person" within the meaning of 18 U.S.C. § 1961(3) and an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Acadia Healthcare Company, Inc. may be served at 830 Crescent Center Drive, Suite 610, Franklin, Tennessee 37067.

24. Defendant Abilene Psychiatric Associates, LLC is an entity whose right to do business in Texas has ended yet continues to provide psychiatric services to the public. Abilene Psychiatric Associates, LLC is a "person" within the meaning of 18 U.S.C. § 1961(3) and an "enterprise" within the meaning of 18 U.S.C. § 1961(4). Psychiatric Associates, LLC may be served by serving its Registered Agent Jerome Kearney at Registered Agent's last known residence at 8701 Remuda Drive, Abilene, Texas 79602.

25. Defendant Tori Hicks, is a "person" within the meaning of 18 U.S.C. § 1961(3) who may be served at her residence located at 5425 Willow Ridge Road, Abilene, Texas 79606 or at her place of employment at 4225 Woods Place, 1111 Industrial Boulevard, Building 2, Abilene, Texas 79602.

26. Defendant, William Zimmerman, is an individual who may be served at his place of employment, United States Capitol Police, 119 D Street, N.E., Washington, D.C. 20510.

## IV. BACKGROUND

27. Plaintiff, Larry Russell Gordon, is a 69 year-old veteran of the United States military action in Vietnam and was defending the city of Saigon at the time of its fall. He was heavily decorated during that war, being awarded both the Silver and Bronze Stars for his valor.

28. Since his retirement, Plaintiff has worked tirelessly in support of this country's military veterans. Although Larry Russell Gordon has a warm home, a spouse of many years, children, and grandchildren in which to embrace, he has chosen as his mission, to care for homeless and discarded veterans in whatever way may be available to his means. This often extends to his spending nights away from that home with those veterans, giving them company and emotional support as sought refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas.

29. After spending time with these veterans, the Plaintiff became uniquely aware of the skyrocketing suicide rate. It was, and is, apparent that considerations of suicide as a method of dealing with unresolved matters pervade veterans from all United States military services. The ambit of these crises extend far past the swamps and jungles of Vietnam to which the Plaintiff had been deployed to the mountains of Afghanistan and the deserts of Iraq in which contemporary veterans have served.

30. Understandably, the Plaintiff patriot found cause to protect his brethren and, heeding the call from such groups as the National Coalition for Homeless Veterans, followed their

explicit urging and contacted his congressman, Robert Randolph Neugebauer, to discuss those concerns.

31. On September 24, 2012, a scant few days after the attack on the American diplomatic mission in Benghazi, Libya, Plaintiff Larry Gordon entered Congressman Neugebauer's outer office on the 8th Floor at 500 Chestnut Street in Abilene, Texas. The Plaintiff's intention was to inquire whether a "town hall" meeting regarding the "Benghazi incident" would be held by Congressman Neugebauer. He additionally requested if he could meet with Congressman Neugebauer. He was told that no town hall style of meeting had been planned. He was further told Congressman Neugebauer was a very busy person and would not be able to meet with him. Upon exiting the office, and as he paused to adjust the exercise weights he was carrying, he was confronted with peals of laughter coming from the Congressman's office. The Plaintiff again rang the bell, the laughing immediately stopped, and the door was answered. Plaintiff then stated, "You didn't have to laugh at me" and then left the building.

32. Subsequent to this event, Plaintiff received a telephone call from Detective William Zimmerman of the Capitol Police in Washington, D.C.. During the call, Detective Zimmerman threatened the Plaintiff with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit the Congressman's office.

33. For a period of almost two years hence, the Plaintiff never lost confidence his voice could be heard and repeatedly sought an audience with Congressman Neugebauer. This Plaintiff was continually and consistently rebuffed by the representative and the employees of the representative of the 19th District of Texas.

## V.    STATEMENT OF FACTS

34. On April 24, 2014, the Plaintiff attempted to visit the office of Congressman Robert Randolph "Randy" Neugebauer on the 8th Floor of 500 Chestnut in Abilene, Texas.

35. After pressing on the buzzer outside Congressman Neugebauer's office and receiving no answer, Plaintiff left the immediate area of the Congressman's office and entered his legal counsel's office at Suite 804 on the same floor of that building.

36. Finding his counsel absent from the office, Plaintiff engaged in conversation with Stella Archuleta, his counsel's receptionist.

37. During the period of the conversation, Plaintiff and the receptionist observed two Abilene Police Officers walking hurriedly past the counsel's office toward the office of Congressman Neugebauer.

38. Moments later, and upon seeing the officers return in the direction of the elevator, the Plaintiff stepped outside his counsel's office to inquire as to the seeming emergency.

39. Apparently, unknown to the police officers and certainly unknown to the Plaintiff, a news reporter from KTAB News was actively filming the interaction in the hallway from the elevator foyer and subsequently through the glass doors of Plaintiff counsel's office.

40. The officers then began to question the Plaintiff regarding his name, requesting his driver's license. The Plaintiff then retreated into his counsel's office, nervously fumbling and shaking while attempting to open his wallet.

41. The Plaintiff then handed his wallet to Stella Archuleta, who retrieved the driver's license for him. While the driver's license was attempted to be found, an officer began to handcuff the Plaintiff within his counsel's office.

42. The officers then released the Plaintiff, telling him that he was being banned from the building, and that his name and driver's license number would be entered in the city's database as a person who could not be in the building.

43. Upon exiting the building, the KTAB news reporter interviewed the Plaintiff. The Plaintiff stated that it had been his intention to again attempt to engage Congressman Neugebauer in a conversation regarding the alarming suicide rate of veterans. He stated it was his

intention to tell Congressman Neugebauer's staff, "Since I talked to you last, 66 people have taken their lives." He told the interviewer, "I want to save lives. My brothers are…once they're your brother, they're always your brother."

44. At the time of the newscast, KTAB had received no response from Congressman Neugebauer's office.

45. Congressman Neugebauer released the following statement moments after the newscast: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being.  We referred the matter to the Capitol Police and the Abilene Police Department so they could provide the assistance required to ensure his health and safety.  I'm grateful for their service today and every day."

46. At approximately 11pm, April 24, 2014, after the Plaintiff and his wife of many years had retired for bed, Abilene Police Officer Pruitt visited the residence. The Plaintiff and his wife, awakened from their sleep, welcomed the officer into their home after he stated he just wanted to talk about the day's prior events.

47. After a lengthy interview, Officer Pruitt left the residence and returned shortly thereafter with Judy McDowell, the Medical Crisis Outreach Team Coordinator at Betty Hardwick Center, a local government Mental Health Mental Retardation Center.

48. During her interview, the Plaintiff stated that he would gladly give his life to save the lives of others.

49. At approximately 2:10am, April 25, 2014, the 69 year-old Plaintiff was handcuffed and taken into custody.

50. Officer Pruitt's Notification of Emergency Detention stated that the Chief of Police had stated the Plaintiff had made threats toward Congressman "Randy" Neugebauer, that he had made suicidal threats, that he was currently taking Paxil for depression, and that he was very agitated the police had been called.

51. In the Notification of Emergency Detention, Officer Pruitt, along with Judy McDowell, determined his statement that he would gladly give his life to save the lives of others to be the declaration of suicidal thoughts. They further claimed him to be grandiose and obsessed over the suicide numbers of veterans. The interviewing parties stated they believed due to the recent events at Fort Hood, any "threat" was serious. Additionally, the notification stated his environment to be inadequate to reduce risk to self and others.

52. Judy McDowell is an employee of the Betty Hardwick Center. The policies and procedures of Betty Hardwick Center are established, reviewed, and approved by a Board of Trustees who are appointees of the governments of the counties of Taylor, Jones, Shackelford, Stephens, and Callahan, Texas. Additionally, the City of Abilene has appointed a trustee, Rita Johnson, who currently serves as the Chair of the Board of Trustees.

53. At 2:20 am, April 25, 2014, transport of the Plaintiff from Plaintiff's home at 766 Peach Street, Abilene, Texas to Abilene Behavioral Health, LLC at 4225 Woods Place, Abilene, Texas occurred. The transport arrived at 2:37am, covering a distance of 3.5 miles in 17 minutes. Plaintiff was accepted by Abilene Behavioral Health, LLC at 2:40 am, April 25, 2014.

54. The Plaintiff was then held through the weekend and on April 28, 2014, Abilene Behavioral Health, LLC, submitted a commitment request by transmission to the County Attorney's Office purporting to be offered in the name of Dr. Duane Miller, the Attending Physician and Medical Director. The Physician's Certificate Of Medical Examination For Mental Illness was, however, not an affidavit of Dr. Duane Miller but an affidavit sworn in the name of Dr. John Crowley.

55. Dr. Crowley's sworn attestation gave the Plaintiff's diagnosis to be one of a "Major Depressive Order, recurrent with severe psychosis." Dr. Crowley's detailed basis for the

opinion offered nothing more than a reiteration of Officer Pruitt's statement to include that Plaintiff had made terroristic threats to Congressman Neugebauer.

56. Dr. Crowley then, on April 28, 2014, submitted an Application For Court-Ordered Temporary Mental Health Services, proposing the Plaintiff be held for treatment for a period not to exceed 90 days and that the County would be entitled to reimbursement by the "Proposed Patient."

57. Dr. Crowley's attestation further stated the "Proposed Patient" had not been charged with a criminal offense that involves an act, attempt, or threat of serious bodily injury to another person.

58. During the period of Plaintiff's confinement in the facility, Plaintiff was informed by Defendant, Daniel Ryan Freshour, P.A., that his medication would be changed and that Plaintiff's signature for an agreement to the change was necessary. Plaintiff told Defendant Freshour that he would prefer to speak with his attorney first. At Defendant Freshour's persistent and overwhelming insistence, Plaintiff, seeing his compliance to be necessary to his eventual release, signed the order.

59. Plaintiff's counsel was notified on April 28, 2014, of the temporary hospitalization hearing to be held on April 30, 2014.

60. Plaintiff filed his original answer on April 29, 2014.

61. On April 30, 2014, the Temporary Commitment Hearing was held with the Plaintiff, his counsel, and the State's sole witness, Daniel Ryan Freshour, PA, confined to a room measuring approximately 80 square feet and specifically equipped by governmental funding, at the Abilene Behavioral Health, LLC location at 4225 Woods Place, Abilene, Texas 79602. The hearing was held by videoconferencing with the County Court of Taylor County, Texas.

62. During questioning under oath, Dr. Freshour admitted no knowledge of any suicide attempt, but asserted the interpretation that a veteran stating he would give his life to save others could be interpreted as suicidal thoughts.

63. Dr. Freshour eventually admitted under questioning by Assistant District Attorney Etta Warman that there had been no credible evidence of threat made to Congressman Neugebauer or any other party.

64. Dr. Freshour testified he had changed the patient's medication and the clinic wished to monitor the results for some time. He admitted, however, such monitoring could be made by the Plaintiff's personal physician.

65. Upon finding no plausible reason for Plaintiff's original seizure or continued hospitalization, Taylor County Assistant District Attorney Etta Warman, withdrew the Motion of Protective Order.

66. The Plaintiff was released April 30, 2014 after being held for six days without cause.

67. The Plaintiff now experiences anxiety, as the result of this seizure, when visiting counsel at 500 Chestnut Street.

68. Plaintiff further now has a general fear of police authority, a condition which had not existed previous to his seizure at the behest of the Chief of Police Stan Standridge and Congressman Neugebauer.

69. On the week of May 26, 2014, Plaintiff sought psychiatric counselling at the advice of counsel to assist him with managing the effects of his unlawful seizure and hospitalization. Given the limited options for treatment, he visited Abilene Psychiatric Center Associates. LLC. When making this appointment with Abilene Psychiatric Center Associates, LLC, Plaintiff explicitly informed the staff of that organization, that he was not willing to make the appointment if the organization or any of its personnel had personal or professional ties with Abilene Behavioral Health, LLC. He was assured there were no such ties.

70. On Thursday, May 29, 2014, Plaintiff met with Defendant Tori Hicks, FNP, BC, PMHNP, an employee or member of Abilene Psychiatric Center Associates, LLC for therapy. After describing his concerns regarding the adverse effect on his person the experience of his unlawful seizure and hospitalization, he was told he should forget the incident and that it was "impossible to change things."

## VI.    COUNT ONE

***71. 42 U.S.C. § 1983 Civil Action For Deprivation of Rights (Against all Defendants)***

72. Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

73. Defendants' actions violated Plaintiff's constitutionally protected rights to be free from unreasonable searches and seizures, as well as his constitutionally protected right to be free from invasions of privacy.

74. By seizing Plaintiff and compelling him to be subjected to psychiatric evaluation and treatment without cause, Defendants sought, for separate purposes, to deprive Plaintiff of the rights afforded him by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

75. Defendants Abilene Police Department, City of Abilene, Texas, County of Taylor, Texas, County of Jones, Texas, County of Shackelford, Texas, County of Stephens, Texas, County of Callahan, Texas, in committing the acts complained of herein, acted to a policy, practice, or custom of their respective municipal and county governments.

76. Defendants Abilene Behavioral Health, LLC dba Abilene Hospital Psychiatric Services, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John Dale Crowley, Tori Hicks, Acadia Healthcare Company, Inc., and Betty Hardwick Center sought to restrain, and did restrain, the Plaintiff's liberty as state actors in violation of the First, Fourth and Fourteenth Amendments of the United States Constitution.

77. Defendant Congressman Robert Randolph Neugebauer solicited, conspired with others, and succeeded in having Plaintiff silenced and deprived of his liberty through the use of his position as a member of the United States House of Representatives.

78. Defendant Tori Hicks sought to further deny, and did deny, Plaintiff of his right to privacy after his explicit instructions that he had absolutely no wish to be treated by any person who maintained, past or present, a relationship with Abilene Behavioral Health, LLC. Defendant Hicks further sought and imperilled privileged communications to which only the Plaintiff and his counsel were privy.

79. Defendant Detective William Zimmerman, of the United States Capitol Police Department conspired with Congressman Robert Randolph Neugebauer to harass Plaintiff in violation of his rights secured by the First, Fourth, and Fourteenth Amendments.

80. As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

81. The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## VII.    COUNT TWO

**82. 18 U.S.C. § 373. Solicitation to Commit a Crime of Violence (Against Defendant Congressman Robert Randolph Neugebauer)**

83. Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

84. Defendant Congressman Robert Randolph Neugebauer engaged Defendant Detective William Zimmerman of the United State Capitol Police Department to threaten the

Plaintiff with reprisals meant to be believed by Plaintiff to mean imminent bodily injury.

85. Defendant Congressman Robert Randolph Neugebauer engaged Abilene Chief of Police, Stan Standridge, to have officers commit a felony against Plaintiff in violation of the laws of the United States and under circumstances strongly corroborative of that intent, causing a restraint of his liberty.

86. As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

87. The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## VIII.   COUNT THREE

*88. 18 U.S.C. § 241 Conspiracy Against Rights (Against Defendant Congressman Robert Randolph Neugebauer, Abilene Police Chief Stan Standridge, and William Zimmerman)*

89. Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

90. Defendants Congressman Robert Randolph Neugebauer and Abilene Police Chief Stan Standridge conspired to oppress and intimidate the Plaintiff in the free exercise of rights and privileges secured to him by the Constitution of the United States.

91. Defendants Congressman Robert Randolph Neugebauer and United States Capitol Police Detective William Zimmerman conspired to oppress and intimidate the Plaintiff

in the free exercise of rights and privileges secured to him by the Constitution of the United States.

92. As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

93. The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

### IX.    COUNT FOUR

*94. 18 U.S.C. § 875 Interstate Communications (Against Defendant William Zimmerman)*

95. Plaintiff hereby incorporates paragraphs 31 through 32 in this count.

96. United States Capital Police Detective William Zimmerman transmitted threats to injure Plaintiff by telephone calls to Plaintiff's cellular telephone.

97. As a direct and proximate result of Defendant's acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

98. The acts of Defendant as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendant.

# X.    COUNT FIVE

*99. 18 U.S.C. § 245 Federally Protected Activities (Against Defendants Congressman Robert Randolph Neugebauer, Abilene Police Chief Stan Standridge and William Zimmerman)*

100.     Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

101.     Congressman Neugebauer, whether or not acting under color of law, by force or threat of force wilfully intimidated Plaintiff in order to prevent him from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States.

102.     Particularly, while Plaintiff repeatedly attempted to visit Congressman Robert Randolph Neugebauer, his elected representative, a benefit and service held by every citizen, the Abilene Police Department, at the behest of Congressman Neugebauer and Abilene Chief of Police Stan Standridge, threatened to arrest the Plaintiff if he returned to the 20-floor building at 500 Chestnut Street in Abilene, Texas, the building in which the Congressman's office was situated.

103.      Congressman Robert Randolph Neugebauer sought to silence the Plaintiff and to prevent any such requests for a meeting, a service or benefit held by all citizens, through his utilization of Detective William Zimmerman of the Capitol Police Department to intimidate the Plaintiff, threatening Plaintiff with reprisals meant to be believed by Plaintiff to mean imminent bodily injury.

104.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

105.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XI.     COUNT SIX

*106.     18 U.S.C. § 872 Extortion By Officers or Employees of the United States (Against Defendants Congressman Robert Randolph Neugebauer and William Zimmerman)*

107.     Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

108.     Congressman Neugebauer and William Zimmerman, as employees of the United States and its departments or agencies, under color of office, committed acts of extortion in their attempt to control and achieve the desired behaviour of the Plaintiff, Larry Russell Gordon.

109.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

110.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XII.   COUNT SEVEN

111.    *18 U.S.C. § 2 (Against Defendant Congressman Robert Randolph Neugebauer)*

112.    Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

113.    Congressman Robert Randolph Neugebauer, through the aforementioned counts one through five, wilfully caused acts to be done which if directly performed by him or another would be an offense against the United States, an act punishable as a principal.

114.    As a direct and proximate result of Defendant's acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

115.    The acts of Defendant as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendant.

## XIII.   COUNT EIGHT

116.    *Tex. Penal Code Ann. § 22.01 (Against Defendant William Zimmerman)*

117.    Plaintiff hereby incorporates paragraphs 31 through 32 in this count.

118.    Defendant Detective William Zimmerman of the United States Capitol Police intentionally and knowingly threatened the Plaintiff with reprisals meant to be believed by Plaintiff to mean imminent bodily injury in violation of the Texas Penal Code.

119.     As a direct and proximate result of Defendant's acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

120.     The acts of Defendant as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendant.

## XIV.     COUNT NINE

***121.     Tex. Penal Code Ann. § 22.07 (Against Defendant William Zimmerman)***

122.     Plaintiff hereby incorporates paragraphs 31 through 32 in this count.

123.     Defendant William Zimmerman' s threat made to Plaintiff was the threat of committing an offense involving violence to Plaintiff with the intent to place the Plaintiff in fear of imminent serious bodily injury in violation of the section entitled Terroristic Threat as defined in the Texas Penal Code.

124.     As a direct and proximate result of Defendant's acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

125.     The acts of Defendant as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendant.

## XV. COUNT TEN

126.     *Tex. Penal Code Ann. § 39.02 Abuse of Official Capacity (Against Defendants Congressman Robert Randolph Neugebauer, Abilene Police Chief Stan Standridge and William Zimmerman)*

127.     Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

128.     Defendant Detective William Zimmerman of the United States Capitol Police Department, with the intent to gain favor of the Defendant Congressman Robert Randolph Neugebauer, and Defendant Neugebauer's desire to obtain a benefit from Detective Zimmerman, each sought to obtain such benefit with the intent to harm the Plaintiff in violation of the Texas Penal Code. This section relates to a public servant's office or employment and such actions constitute the offense of Abuse of Official Capacity.

129.     Defendants Neugebauer and Standridge utilized their positions intentionally to deny the Plaintiff of the enjoyment of his rights of free speech, of his liberty, and the right against unreasonable seizure to their mutual benefit. These actions are violations defined in the Texas Penal Code as Abuse of Official Capacity.

130.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

131.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XVI. COUNT ELEVEN

132.     ***Tex. Penal Code Ann. § 39.03 (Against Defendants Congressman Robert Randolph Neugebauer, Abilene Police Chief Stan Standridge and William Zimmerman)***

133.     Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

134.     The threat made by Defendant William Zimmerman at the behest of Defendant Robert Randolph Neugebauer were matters committed as public servants acting under the color of their office. They intentionally impeded the Plaintiff in the exercise or enjoyment of the right to request an audience with Congressman Neugebauer and to prevent Plaintiff from visiting a private building to which he had a right to enter, and to impede Plaintiff's right to speak publicly on the matter. These actions are violations defined in the Texas Penal Code as Official Oppression.

135.     Defendants Neugebauer and Standridge intentionally denied the Plaintiff of the enjoyment of his rights of free speech, of his liberty, and the right against unreasonable seizure. These actions are violations defined in the Texas Penal Code as Official Oppression.

136.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

137.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XVII. COUNT TWELVE

138.     ***Tex. Penal Code Ann. § 15.02 (Against Defendants Congressman Robert Randolph Neugebauer, Stan Standridge and William Zimmerman)***

139.     Plaintiff hereby incorporates paragraphs 31 through 32 and 34 through 69 in this count.

140.     Defendant Neugebauer agreed with Defendant William Zimmerman of the United States Capitol Police Department to silence and prevent Plaintiff in his requests for discussion regarding matters concerning United States military veterans. Defendant William Zimmerman performed the task by his overt act of making the assault, among other offenses, upon the Plaintiff. Under the Texas Penal Code, such an agreement constituting a conspiracy may be inferred from the acts of the parties. The Acts of Defendants Congressman Robert Randolph Neugebauer and Detective William Zimmerman constitute a Criminal Conspiracy under the Texas Penal Code.

141.     Defendant Neugebauer agreed with Abilene Chief of Police Stan Standridge to silence, seize, and detain the Plaintiff in a mental health institution in order that he may be intimidated and marginalized of his rights guaranteed to him under the Constitution of the United States. Defendant Standridge performed the overt act in pursuance of the agreement by Abilene Police Officer Pruitt to perform a predetermined psychological evaluation of the Plaintiff through his false assertion the Plaintiff had made threats against Defendant Neugebauer. Under the Texas Penal Code, such an agreement constituting a conspiracy may be inferred from the acts of the parties. The Acts of Defendants Congressman Robert Randolph Neugebauer and Abilene Police Chief Stan Standridge constitute a Criminal Conspiracy under the Texas Penal Code.

142.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

143.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XVIII. COUNT THIRTEEN

**144.     Tex. Health & Safety Code Ann. § 571.020 Criminal Penalties (*Against Defendants Congressman Robert Randolph Neugebauer, Abilene Police Chief Stan Standridge, Abilene Police Department, City of Abilene, Betty Hardwick Center, County of Taylor, Texas, County of Jones, Texas, County of Shackelford, Texas, County of Stephens, Texas, County of Callahan, Texas, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John Dale Crowley, and Acadia Healthcare Company, Inc.*)**

145.     Plaintiff hereby incorporates paragraphs 15 through 25 and 34 through 69 in this count.

146.     The Defendants committed offenses against the Texas Health & Safety Code by intentionally causing, conspiring with others to cause, or assisting another to cause the unwarranted commitment of a person to a mental health facility.

147.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action,

attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

148.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XIX.   COUNT FOURTEEN

**149.     *Tex. Bus. & Com, Code Ann. § 17.12, Deceptive Advertising (Against Defendants Abilene Behavioral Health, LLC, Abilene Psychiatric Center Associates, LLC, and Acadia Healthcare Company, Inc.)***

150.     Plaintiff hereby incorporates paragraphs 15 through 25 and 34 through 69 in this count.

151.     Defendants Abilene Behavioral Health, LLC and Acadia Healthcare Company, Inc. have disseminated statements materially representing the character of their services provided by Abilene Behavioral Health, LLC for the purpose of selling or contracting to sell psychiatric and healthcare services, holding the entity is licensed to conduct business in the State of Texas. Such statements are disseminated through commercial television advertising, the entity's website, and through representations made to officials of the State of Texas and those of the United States of America.

152.     Defendant Abilene Psychiatric Center Associates, LLC, has materially represented the character of its services, holding by advertising through the dissemination of business cards to potential patients and the general public, the entity is licensed to conduct business in the State of Texas.

153.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action,

attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

154.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the statutorily protected rights of the Plaintiff, thus entitling Plaintiff to an award of treble damages against the individually named Defendants.

## XX.    COUNT FIFTEEN

**155.     *Tex. Bus. & Com, Code Ann. § 17.46(b)(2) and (3), Deceptive Trade Practices Unlawful (Against Defendants Abilene Behavioral Health, LLC, Abilene Psychiatric Center Associates, LLC, and Acadia Healthcare Company, Inc.)***

156.     Plaintiff hereby incorporates paragraphs 15 through 25 and 34 through 69 in this count.

157.     Defendants Abilene Behavioral Health, LLC and Acadia Healthcare Company, Inc. have disseminated statements materially representing the character of their services provided by Abilene Behavioral Health, LLC by causing confusion or misunderstanding as to the source, sponsorship, approval or certification of the services provided and in causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

158.      Defendant Abilene Psychiatric Center Associates, LLC has materially represented the character of its services by causing confusion or misunderstanding as to the source, sponsorship, approval or certification of the services provided and in causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

159.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action,

attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

160.    The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the statutorily protected rights of the Plaintiff, thus entitling Plaintiff to an award of treble damages against the individually named Defendants.

## XXI.   COUNT SIXTEEN

*161.    18 U.S.C. § 1962(c) Prohibited Activities (Against Defendants Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John Dale Crowley, Abilene Psychiatric Center Associates, LLC, Tori Hicks, Acadia Healthcare Company, Inc.)*

162.    Plaintiff hereby incorporates paragraphs 15 through 25 and 34 through 69 in this count.

163.    The conduct of the Defendants violates the provisions of 18 U.S.C. § 1962(c).

### 1)   *The Conspiring Defendants created an association-in-fact enterprise.*

164.    The enterprise was an association-in-fact of the conspiring Defendants.

165.    The enterprise had a purpose to hold Plaintiff and others similarly situated under "color of law" and unlawfully deprive him of his liberty in order to fraudulently obtain payment from the State of Texas under its respective Medicare and other programs, from the government of the United States under the Medicare program administered under CMS, and from commercial insurance carriers.

166.    The enterprise was comprised of "persons" within the meaning of 18 U.S.C. § 1961(3). The Defendants were "persons…associated with" the enterprise within the meaning of 18 U.S.C. 1962(c).

167.     At all times, the enterprise was engaged in, and its activities affected, interstate commerce of the United States.

2) ***The Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.***

168.     The Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. The individual Defendants played integral and necessary roles in the enterprise and its operations. Without their individual participation in the enterprises operations, the enterprise could not have functioned.

169.     Defendants Abilene Behavioral Health, LLC, is an entity whose right to transact business in Texas has been forfeited due to its failure to file and pay Texas Franchise or Margin Tax and their accompanying reports. Abilene Behavioral Health, LLC, is a 100% owned by Acadia Healthcare Company, Inc. The collection of said revenues without license to contract business in Texas has committed a fraud on the Plaintiff, the State of Texas, the United States of America, various insurers, and other patients similarly situated.   The failure to pay Texas Franchise Tax is an offense under Tex. Tax Code Ann. § 171.154 entitled Payment to Comptroller. The failure to file annual Franchise Tax Reports is an offense under Tex. Tax Code Ann. § 171.202 entitled Annual Report.

170.     Defendant Abilene Psychiatric Center Associates, LLC is also an entity whose right to conduct business in the State of Texas was voluntarily dissolved on October 29, 2006. Defendant Abilene Psychiatric Center Associates, LLC, however, continues to treat and to receive payment for treatment of patients as of May 29, 2014.  Further, it continues to fail to file reports to the Texas Secretary of State and the Comptroller of the State of Texas involving its activities, to include the failure to pay Franchise or

Margin tax owed to the State of Texas. The failure to pay Texas Franchise Tax is an offense under Tex. Tax Code Ann. § 171.154 entitled Payment to Comptroller. The failure to file annual Franchise Tax Reports is an offense under Tex. Tax Code Ann. § 171.202 entitled Annual Report. The failure to file a Public Information Report is an offense under Tex. Tax. Code Ann. § 171.204. The persons involved in patient treatment under this entity are also among those parties intimately involved with Abilene Behavioral Health, LLC and its parent, Acadia Healthcare Company, Inc.

171.     Red River Hospital, LLC, although not a Defendant in this matter, is an entity 100% owned by Acadia Healthcare Company, Inc. whose operating procedures are apposite to that of Abilene Behavioral Health, LLC. Red River Hospital, LLC, is an entity whose right to transact business in Texas has been forfeited due to its failure to file and pay Texas Franchise or Margin Tax and their accompanying reports. The collection of revenues without license to contract business in Texas has committed a fraud on the State of Texas, the United States of America, various insurers, and other patients similarly situated.   The failure to pay Texas Franchise Tax is an offense under Tex. Tax Code Ann. § 171.154 entitled Payment to Comptroller. The failure to file annual Franchise Tax Reports is an offense under Tex. Tax Code Ann. § 171.202 entitled Annual Report.

172.     Each Defendant committed numerous predicate acts as set out in 18 U.S.C. 1961(1), including (a) repeated acts of knowingly utilizing the United States Postal Service for the purpose of falsely claiming costs for needed psychiatric treatment in furtherance of their fraudulent scheme in violation of 18 U.S.C. § 1341 Frauds and Swindles and repeated acts of causing, for the purpose of obtaining payments in furtherance of their fraudulent scheme, claims and bank transfers transmitted by wire in violation of 18 U.S.C. § 1343, Fraud by Wire Radio and Television.

173.    The Conspiracy also involved multiple acts of use of the United States Postal Service to promote, manage, establish and carry on the unlawful activity in violation of 18 U.S.C. § 1952 Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises and the Money Laundering Control Act, 18 U.S.C. §§ 1956, 1957, which prohibits the use or movement through the United States of proceeds of unlawful activity with the intent to promote that unlawful activity or knowing that the transaction is designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity. These multiple acts coalesce with violations of Tex. Penal Code Ann. § 34.02, Money Laundering. Unlawful activity includes all RICO predicate acts.

174.    The Defendants' financial transfers constituted money laundering as both movement through the United States of criminal proceeds and as transfers in furtherance of the conspiracy.

175.    The Defendants' scheme necessarily involved multiple violations of federal criminal prohibitions against the interstate transport of stolen goods in violation of 18 U.S.C. 2314 Interstate or Foreign Transportation of Stolen Goods. Section 2314 prohibits the interstate or foreign transport of stolen goods, including money, a core part of Defendants' scheme.

176.    The Defendants' scheme also necessitated multiple violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343 by each fraudulent claim.

177.    The Defendants' scheme organized, managed, and supervised a continuing financial enterprise in violation of 18 U.S.C. § 225, Continuing Financial Crimes Enterprise, and Tex. Penal Code Ann. § 71.02, Engaging in Organized Criminal Activity.

178.     The Defendants' scheme involved false statements relating to healthcare matters in violation of 18 U.S.C. § 1035, False Statements Related to Healthcare Matters. These false statements regarding the Plaintiff's mental status and condition were knowing and wilful executions of Defendants' scheme to defraud health care benefit programs in violation of 18 U.S.C. § 1347, Health Care Fraud, and 18 U.S.C § 287, False, Fictitious and Fraudulent Claims, and Tex. Penal Code Ann. § 35A.02, Medicaid Fraud, including the knowing execution of a scheme to defraud the United States in violation of 18 U.S.C. § 1031, Major Fraud Against the United States. Such false statements necessitate the preparation and possession of false papers to assist billing personnel and others to defraud the United States in violation of 18 U.S.C. § 1002, Possession of False Papers to Defraud United States.

179.     The Defendants' actions necessarily violated standards established by the Securities and Exchange Commission and the Public Company Accounting Oversight Board in that through their aforementioned acts, Defendants directly and indirectly, used instrumentalities of interstate commerce, the mail service of the United States, and the facilities of national securities exchanges using manipulative devices in contravention of the rules and regulations prescribed by the Securities and Exchange Commission. The use of manipulative devices are violations of 15 U.S.C. § 78j, Manipulative and Deceptive Devices.

180.     The Defendants' actions further violated the tax laws of the United States, causing both incorrect tax reporting with both the Internal Revenue Service and the Securities and Exchange Commission. Prior to April 1, 2011, the companies and its limited liability subsidiaries were tax as "flow-through" entities. After April 1, 2011, these entities elected to be taxed as a corporation. During the period prior to April 1, all taxes allocable to Abilene Behavioral Health, LLC, were attributable to the members

of the Limited Liability Company. As such, the aforementioned racketeering activities necessarily caused the violation of 26 U.S.C. § 1503, Computation and Payment of Tax, 26 U.S.C. § 6011, General Requirement of Return Statement or List, and 26 U.S.C. § 7434, Civil Damages for Fraudulent Filing of Information Returns.

181.   The Defendants' additionally violated the laws of the United States in tax returns and reporting after April 1, 2011. As such, the aforementioned racketeering activities necessarily caused the violation of 26 U.S.C. § 1503, Computation and Payment of Tax, 26 U.S.C. § 6011, General Requirement of Return Statement or List, and 26 U.S.C. § 7434, Civil Damages for Fraudulent Filing of Information Returns.

182.   The Defendants' additionally procured a change in prescription from Plaintiff through the use of duress through the actions by Daniel Ryan Freshour, P.A. and in violation of Tex. Penal Code Ann. § 32.46, Securing Execution of Document by Deception.

### 3) *The predicate acts formed a pattern.*

183.   The predicate acts of racketeering described above constitute a pattern of racketeering activity. They had the same or similar unlawful purposes, results, participants and victim, and were not sporadic isolated events. Rather, they were a calculated series of repeated violation of the law.

184.   The Defendants' repeated violations of law did not constitute a scheme of limited duration, but rather would have continued indefinitely had not Plaintiff been released from the detention. The racketeering activity of these entities continues to violate the laws of the United States, the State of Texas, insurers, and patients.

185.   As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action,

attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

186.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XXII.  COUNT SEVENTEEN

***187.     18 U.S.C. § 1962(d) Prohibited Activities (Against Defendants Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John Dale Crowley, Abilene Psychiatric Center Associates, LLC, Tori Hicks, Acadia Healthcare Company, Inc.)***

188.     The Defendants conspired among themselves and others to engage in violations described in Count Fifteen immediately above.

189.     The Defendants agreed to the unlawful purpose of the conspiracy – to obtain and withhold Plaintiff's liberty for a period not to exceed 90 days for payment of funds from government entities and medical insurance programs in violation of 18 U.S.C. § 286, Conspiracy to Defraud the Government With Respect to Claims and 18 U.S.C. § 371, Conspiracy to Commit Offense or to Defraud United States.

190.     Each of the Defendants voluntarily joined in the operation of the association-in-fact enterprise and the conspiracy, which acted in interstate commerce of the United States.

191.     Each Defendant knowingly joined the conspiracy to participate in the operation of the association-in-fact enterprise in an illegal and illicit manner.

192.     Each Defendant did so through a pattern of racketeering and by agreeing to commit and, in fact, did commit predicate acts described above, all while knowing that the predicate acts formed a pattern and supported the overall scheme and conspiracy.

193.     As a direct and proximate result of Defendants' acts as described above, Plaintiff suffered damages in the form of costs incurred to prosecute this action, attendant loss of freedom, the attendant infliction of mental anguish and distress with the deprivation of his constitutional and statutory rights.

194.     The acts of Defendants as described above were motivated by an evil intent, and involved a reckless and callous indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against the individually named Defendants.

## XXIII. JURY TRIAL DEMAND

195.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

## XXIV. PRAYER FOR RELIEF

Plaintiff, Larry Russell Gordon respectfully prays that this Court award him all relief to which he is entitled under law or equity, including the imposition of constructive trusts.                    Dated: June 9, 2014

Respectfully submitted,

_  s/ Clay D. Thomas_____
Clay D. Thomas
Texas Bar No. 24088520

Clay Thomas, P.C.
500 Chestnut Street
Suite 502
Abilene, Texas 79602
(325) 268-5838
(877) 899-0382 (facsimile)
clay.thomas@claythomaspc.com