## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-cv-0093-J |
| | § | |
| ROBERT RANDOLPH NEUGEBAUER, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants: Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The complaint lists seventeen separate claims arising out of Plaintiff's temporary confinement in a mental health facility. This opinion addresses the motions to dismiss filed by Defendants County of Taylor, County of Jones, County of Shackelford, County of Stephens, and County of Callahan.

On July 2, 2014, Defendants County of Taylor, County of Jones, County of Shackelford, County of Stephens, and County of Callahan each filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, seeking this Court's dismissal of Plaintiff's claims

1

against them.  Plaintiff filed responses to the motions of Jones, Shackelford, Stephens, and Callahan Counties on July 21, 2014.  Plaintiff filed a response to Taylor County's motion on July 22, 2014.  Before this Court could rule on Defendants' Motions to Dismiss, Plaintiff filed an amended complaint and then followed that filing with a Motion for Leave to File Amended Pleadings, which this Court granted on September 18, 2014.   On September 30, 2014, Defendants County of Jones, County of Shackelford, County of Stephens, and County of Callahan filed a second Motion to Dismiss, in response to Plaintiff's First Amended Complaint. Defendant County of Taylor filed its second Motion to Dismiss on October 1, 2014.  Plaintiff filed a response to Defendants County of Jones, County of Shackelford, County of Stephens, and County of Callahan's motion on October 21, 2014.  Plaintiff filed a response to Defendant Taylor County's motion on October 22, 2014.  Defendants' motions are GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran.  Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means."  This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights.  Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time.  Plaintiff alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office.  He assumed the laughter was directed at

2

him.  He again rang the bell.  When the door was opened, he said, "you don't have to laugh at me."  He then left the building.  Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police.  Although the exact conversation is not alleged, Plaintiff states that Detective Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office."  Nevertheless, Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene.  No one answered the door.  Plaintiff walked down the hall and began chatting with a receptionist in a nearby office.  At some point, two Abilene police officers arrived.  When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency.  Plaintiff alleges that the officers started to handcuff him but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother."  After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being.  We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife. Plaintiff asserted his willingness to give his life to save the lives of others. In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide. However, during Plaintiff's preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman. After the interview, Officer Pruitt left Plaintiff's residence and returned with Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas. Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change. Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code. The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health. The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis." On the same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

4

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County.   At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change.   Plaintiff alleges that Depakote has certain possible side effects.   At the conclusion of the hearing, in which it was determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the Motion of Protective Order.   Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to the counties of Taylor, Jones, Shackelford, Stephens, and Callahan.   First, Plaintiff alleges that the Betty Hardwick Center is run by a Board of Trustees, which establishes, reviews, and approves the policies and procedures of the Center.   The members of the Board of Trustees are appointed by the counties of Taylor, Jones, Shackelford, Stephens, and Callahan.   Second, Plaintiff alleges that "[d]efendants . . . County of Taylor, Texas; County of Jones, Texas; County of Shackelford, Texas; County of Stephens, Texas; and County of Callahan, Texas, in committing the acts complained of herein, acted on a policy, practice or custom of their respective . . . county governments."

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone.   *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).   A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

## DISCUSSION

In his First Amended Complaint, Plaintiff asserts four causes of action against the counties of Taylor, Jones, Shackelford, Stephens, and Callahan: (A) violation of 42 U.S.C. § 1983 based on alleged First, Fourth and Fourteenth Amendment violations, (B) false imprisonment, (C) violation of Tex. Health & Safety Code § 576.025 (administration of psychoactive medication), and (D) intentional infliction of emotional distress (as to Defendant Taylor County only).

### A.  42 U.S.C. § 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).  A county or other municipality can be liable under § 1983 through either (1) the unconstitutional conduct of a county policymaker or (2) a county policy, practice, or custom that deprives the plaintiff of his constitutional rights.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).  Here, Plaintiff alleges that Defendants' policies, practices, and customs deprived him of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

To prevail on a § 1983 claim based on county policies and practices, a plaintiff must show (1) that there is a policymaker; (2) that the policymaker adopted or executed an official policy; and (3) that there was a violation of plaintiff's constitutional rights whose moving force was the policy or custom. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). Plaintiff alleges that the twenty-two defendants listed in the complaint deprived him of his right to be free from unreasonable searches and seizures and his right to be free from invasion of privacy when they "seiz[ed] Plaintiff and compel[ed] him to be subjected to psychiatric evaluation and treatment without cause."  Plaintiff also asserts that in so depriving him of his constitutional rights, Defendants "acted on a policy, practice, or custom of their respective . . .

county governments." Finally, Plaintiff alleges that Defendants appointed the members of the

Betty Hardwick Center's Board of Trustees and that the Board of Trustees establishes, reviews,

and approves the policies and procedures of the Betty Hardwick Center. Defendants seek to

dismiss Plaintiff's § 1983 claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief can be granted.

A liberal reading of the complaint reveals that Plaintiff has alleged facts sufficient to

plead the first element of a § 1983 claim alleging municipal liability—specifically, Plaintiff

alleges that the Board of Trustees of the Betty Hardwick Center is a county policymaker for

purposes of § 1983 liability. *See Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)

("[a] "policymaker" must be one who takes the place of the governing body in a designated area

of city administration . . . . they are not supervised except as to the totality of their

performance").

However, Plaintiff fails to allege any facts which would satisfy the second element of a §

1983 claim alleging municipal liability—that there was an official policy in existence. *See

Piotrowski* 237 F.3d at 578. Courts have recognized two types of official policies for § 1983

purposes. First an official policy can be "[a] policy statement, ordinance, regulation, or decision

that is officially adopted and promulgated by the municipality's lawmaking officers or by an

official to whom the lawmakers have delegated policy-making authority." *Colle v. Brazos Cnty.,

Tex.*, 981 F.2d 237, 244-45 (5th Cir. 1993). Second, an official policy could also be "[a]

persistent, widespread practice of city officials or employees, which, although not authorized by

officially adopted and promulgated policy, is so common and well settled as to constitute a

custom that fairly represents municipal policy." *Johnson v. Deep E. Tex. Reg'l Narcotics

Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). However, the mere fact that harm

resulted from some interaction with a governmental entity does not permit the inference of an official policy under § 1983. *See Collee*, 981, F.2d at 245. Instead, to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must specifically identify each policy which allegedly caused the constitutional violations. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 579-80 (5th Cir. 2001); *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("[t]he description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts").

Besides a general conclusory statement that Defendants have a policy, practice, and custom of violating individuals' First, Fourth, and Fourteenth Amendment rights, Plaintiff's complaint lacks any specific facts that would support this conclusion. Plaintiff fails to identify what the Defendants' policy is or how the policy is implemented. Furthermore, Plaintiff fails to allege any pattern of similar instances where other citizens were deprived of their constitutional rights as a result of this alleged policy. *See Lopez-Rodriguez v. City of Levelland, Tex.*, 100 F. App'x 272, 274 (5th Cir. 2004); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

Finally, because Plaintiff's complaint does not identify an official policy established by the Defendants, it also fails to allege facts which would satisfy the third element of a § 1983 claim for municipal liability—that there was a violation of Plaintiff's constitutional rights whose moving force was the policy or custom. *See Piotrowski*, 237 F.3d at 578. To satisfy this element, a plaintiff must show both culpability and a direct causal link between the county policy and the constitutional violation. *See id.* at 580. Because Plaintiff has failed to identify an official policy promulgated by the Board of Trustees of the Betty Hardwick Center, he is unable to identify any causal link between the alleged policy and the alleged constitutional violation.

Plaintiff's conclusory allegations against Defendants fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court dismisses Plaintiff's § 1983 claims against Defendants County of Taylor, County of Jones, County of Shackelford, County of Stephens, and County of Callahan.

## B. FALSE IMPRISONMENT

To prevail on a claim of false imprisonment, a plaintiff must show (1) willful detention by the defendant; (2) without plaintiff's consent; and (3) without authority of law. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). However, Plaintiff is unable to plead a cause of action against Defendants for the intentional tort of false imprisonment because state and local governmental units in Texas are protected from tort suits by the doctrine of sovereign immunity, unless immunity is waived by the Texas Tort Claims Act. *See Chalmers v. City of Dall.*, 3:14-CV-36-N, 2014 WL 1778946, at *4 (N.D. Tex. May 5, 2014). Under the Texas Tort Claims Act, governmental immunity is waived only for cases involving the use of publically-owned vehicles, premises defects, and injuries arising from the conditions or use of property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021. Furthermore, the waiver of sovereign immunity does not extend to intentional torts, including false imprisonment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2); *Muhammad v. Newell*, 3-08-CV-1426-BD, 2009 WL 2482142, at *3 (N.D. Tex. Aug. 12, 2009) (noting that the limited waiver of sovereign immunity found in the Texas Tort Claims Act "does not extend to claims 'arising out of assault, battery, false imprisonment, or any other intentional tort'"). Because Plaintiff's false imprisonment claim does not fall within the narrow exception to sovereign immunity found in the Texas Tort Claims Act, the Defendant counties are immune from liability. Plaintiff's false imprisonment claim against

the Defendant counties is dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### C.  TEX. HEALTH & SAFETY CODE § 576.025

Plaintiff also attempts to plead a cause of action under Tex. Health & Safety Code § 576.025(b)(1)-(4), which outlines the procedures required to obtain consent from a patient for the administration of psychoactive medication.  Defendants move to dismiss this claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Tex. Health & Safety Code § 576.025 is a state criminal statute and that exclusive jurisdiction for prosecuting such actions lies with the Texas state courts.

Section 576.025 does not create a private cause of action—it is a criminal statute and only the state of Texas may prosecute individuals for violation of the statute.  *See* Tex. Health & Safety Code Ann. § 571.021 ("[t]he state attorney general and the district and county attorneys within their respective jurisdictions shall prosecute violations of this subtitle [the Texas Mental Health Code]"); Tex. Health & Safety Code Ann. § 571.020(c) (listing punishments involving monetary fines and jail time for violation of any provision of the Texas Mental Health Code). This Court lacks jurisdiction to prosecute such state law crimes.  Although 18 U.S.C. § 3231 gives "the district courts of the United States" original jurisdiction over "all offenses against the laws of the United States," it specifically notes that "[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."  18 U.S.C. § 3231.  And in Texas, the Texas state courts have exclusive jurisdiction over state criminal statutes.  *See* Tex. Code Crim. Pro. Ann. art. 4.01.  Furthermore, the violation of a criminal statute does not give rise to a private cause of action in favor of the victim of the crime. *See Haffke v. U.S. Atty. Gen.*, 3-01-CV-2515-D, 2002 WL 122521, at *2 (N.D. Tex. Jan. 11,

2002) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App. 2001).

Although the Texas Mental Health Code permits the assessment of civil penalties in addition to criminal penalties, an action to recover civil penalties can only be brought by a governmental entity—the mere existence of a civil penalties provision in the Texas Mental Health Code does not create a private cause of action. *See* Tex. Health & Safety Code Ann. § 571.023(b)-(d) (authorizing the Texas Department of State Health Services, the Texas Attorney General, and any district or county attorney to institute a suit to recover civil penalties); *id.* § 571.023(f) (providing that any civil penalties collected shall be deposited in either the general revenue fund of the state of Texas or the general fund of the county in which the suit was heard). Accordingly, Plaintiff's claims under the Texas Mental Health Code are dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)).

However, Plaintiff is unable to plead a cause of action against Defendant Taylor County for the intentional tort of intentional infliction of emotional distress because state and local governmental units in Texas are protected from tort suits by the doctrine of sovereign immunity, unless immunity is waived by the Texas Tort Claims Act. *See Chalmers v. City of Dall.*, 3:14-CV-36-N, 2014 WL 1778946, at *4 (N.D. Tex. May 5, 2014). Under the Texas Tort Claims Act,

12

governmental immunity is waived only for cases involving the use of publically-owned vehicles, premises defects, and injuries arising from the conditions or use of property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  Furthermore, the waiver does not extend to intentional torts, such as intentional infliction of emotional distress.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2); *Muhammad v. Newell*, 3-08-CV-1426-BD, 2009 WL 2482142, at *3 (N.D. Tex. Aug. 12, 2009) (noting that the limited waiver of sovereign immunity found in the Texas Tort Claims Act "does not extend to claims 'arising out of assault, battery, false imprisonment, or any other intentional tort'").  Because Plaintiff's intentional infliction of emotional distress claim does not fall within the narrow exception to sovereign immunity found in the Texas Tort Claims Act, Taylor County is immune from liability.  Plaintiff's intentional infliction of emotional distress claim against Defendant Taylor County is dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### E.  OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court grants a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the defect by amending the complaint.  *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim").  Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by Defendants in their respective motions to dismiss.  Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action.  Given the foregoing, those claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

## CONCLUSION

The Motions to Dismiss filed by Defendants County of Taylor, County of Jones, County of Shackelford, County of Stephens, and County of Callahan are GRANTED.  Plaintiff's claims against the Defendant counties are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed this 3/5 day of October, 2014.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE

14