IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 1:14-cv-0093-J |
| ROBERT RANDOLPH NEUGEBAUER, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants: Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The complaint lists seventeen separate claims arising out of Plaintiff's temporary confinement in a mental health facility. This opinion addresses the motion to dismiss filed by Defendant William Zimmerman, a United States Capitol Police Officer.

Plaintiff filed an amended complaint and then followed that filing with a Motion for Leave to File Amended Pleadings, which this Court granted on September 18, 2014. On October 2, 2014, Defendant William Zimmerman filed a Motion to Dismiss, in response to Plaintiff's First Amended Complaint. On the same day, the United States filed a Notice of Substitution,

1

seeking to substitute the United States for Defendant Zimmerman as to counts Seven, Eleven, and Twelve in Plaintiff's First Amended Complaint. On October 3, 2014, this Court ordered the United States substituted for Defendant Zimmerman on counts Seven, Eleven, and Twelve, and dismissed those same counts as against Defendant Zimmerman. As a result, the only remaining counts as to Defendant Zimmerman are a 42 U.S.C. § 1983 claim and a civil conspiracy claim. Plaintiff filed a response to Defendant's motion to dismiss on October 23, 2014. Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran. Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means." This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights. Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time. Plaintiff alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office. He assumed the laughter was directed at him. He again rang the bell. When the door was opened, he said, "you don't have to laugh at me." He then left the building. Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police. Although the exact conversation is not alleged, Plaintiff states that Detective

Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office." Nevertheless, Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene. No one answered the door. Plaintiff walked down the hall and began chatting with a receptionist in a nearby office. At some point, two Abilene police officers arrived. When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency. Plaintiff alleges that the officers started to handcuff him but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother." After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being. We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife. Plaintiff asserted his willingness to give his life to save the lives of others. In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide. However, during Plaintiff's

preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman. After the interview, Officer Pruitt left Plaintiff's residence and returned with Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas. Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change. Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code. The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health. The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis." On the same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County. At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change. Plaintiff alleges that Depakote has certain possible side effects. At the conclusion of the hearing, in which it was

4

determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the Motion of Protective Order. Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to William Zimmerman, a Detective with the United States Capitol Police. First, Plaintiff alleges that Detective Zimmerman called Plaintiff following Plaintiff's visit to Congressman Neugebauer's offices and "threatened Plaintiff with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office." Second, Plaintiff alleges that Congressman Neugebauer ordered Detective Zimmerman to call Plaintiff and intimidate him and states that the Congressman and the Detective "conspired . . . to harass Plaintiff in violation of his rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution." Finally, Plaintiff alleges that Detective Zimmerman performed an overt act in furtherance of an alleged conspiracy by "making the assault . . . upon the Plaintiff."

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

In his First Amended Complaint, Plaintiff asserted five causes of action against Defendant William Zimmerman. However, following the substitution of the United States for Defendant Zimmerman on counts Seven, Eleven, and Twelve, there remain only two causes of action alleged against Defendant Zimmerman: (A) violation of 42 U.S.C. § 1983 based on alleged First, Fourth and Fourteenth Amendment violations, and (B) civil conspiracy.

### *A.   42 U.S.C. § 1983*

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Section 1983, by its terms, applies only to those

persons or entities who act under color of *state* law. See 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any *State* . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured") (emphasis added). It does not apply to actions taken by federal officials acting under color of federal law. *See Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993) ("federal officials, acting under color of federal law rather than state law, are not subject to suit under § 1983"); *Eltayib v. Cornell Companies Inc.*, 533 F. App'x 414, 414-15 (5th Cir. 2013) ("[section] 1983 applies to constitutional violations by state, rather than federal, officials").

Plaintiff's First Amended Complaint contains no factual allegations which would suggest that Defendant Zimmerman was acting under the color of state law when he allegedly made a threatening phone call to Plaintiff. Instead, the facts Plaintiff allege suggest that Defendant Zimmerman was acting under the color of federal law in his official capacity as a detective with the United States Capitol Police. Because Plaintiff has failed to allege facts showing that Defendant Zimmerman was acting under color of state law, his complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court dismisses Plaintiff's § 1983 claims against Defendant William Zimmerman. *See Banks v. F.D.I.C.*, 374 F. App'x 532, 534-35 (5th Cir. 2010) (affirming dismissal of plaintiff's § 1983 claims under Rule 12(b)(6) where defendants were federal officials acting under color of federal law); *Rebman v. United States*, 4:97-CV-502-A, 1998 WL 51361, at *1 (N.D. Tex. Jan. 22, 1998) (dismissing plaintiff's § 1983 claims under Rule 12(b)(6) because defendants were not state officials and plaintiff failed to allege that defendants acted under color of state law).

### B. CIVIL CONSPIRACY

To prevail on a claim of civil conspiracy under Texas law, a plaintiff must show (1) a combination of two or more persons, (2) an object to be accomplished which is unlawful or by unlawful means, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). To survive a Rule 12(b)(6) motion to dismiss on a civil conspiracy claim, a plaintiff must plead enough facts to satisfy both the civil conspiracy claim and the underlying tort on which the conspiracy claim is based. *See Berry v. Indianapolis Life Ins. Co.*, 638 F. Supp. 2d 732, 736 (N.D. Tex. 2009) (noting that civil conspiracy under Texas law is a derivative tort because a defendant's liability for conspiracy depends on participation in an underlying tort); *see also Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

Here, the underlying tort that Plaintiff appears to base his civil conspiracy claim on is Defendant Zimmerman's alleged violation of 42 U.S.C. § 1983. *See* Pl.'s Am. Compl. 33 ("[Congressman] Neugebauer agreed with Defendant William Zimmerman . . . to silence and prevent Plaintiff in his requests for discussion regarding matters concerning United States military veterans"). However, this Court has already ruled that the allegations in Plaintiff's First Amended Complaint fail to state a § 1983 claim against Defendant Zimmerman upon which relief can be granted. *See* section (A), *supra*. Because Plaintiff has failed to plead enough facts to state a claim for the underlying tort on which the civil conspiracy claim is based, the Court dismisses Plaintiff's civil conspiracy claim against Defendant Zimmerman under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### C. OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court grants a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the defect by amending the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim"). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by Defendants in their respective motions to dismiss. Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action. Given the foregoing, those claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

## CONCLUSION

The Motion to Dismiss filed by Defendant William Zimmerman is GRANTED. Plaintiff's claims against the Defendant are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed this 31st day of October, 2014.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE