## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-cv-0093-J |
| | § | |
| ROBERT RANDOLPH NEUGEBAUER, | § | |
| *et al.,* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants: Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The complaint lists seventeen separate claims arising out of Plaintiff's temporary confinement in a mental health facility. This opinion addresses the motion to dismiss filed by Stan Standridge.

On June 30, 2014, Defendant Stan Standridge filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, seeking this Court's dismissal of Plaintiff's claims against him. Plaintiff filed responses to Defendant's motion on July 20, 2014. Before this Court could rule on Defendant's Motion to Dismiss, Plaintiff filed an amended complaint and then followed that filing with a Motion for Leave to File Amended Pleadings,

1

which this Court granted on September 18, 2014.  On September 30, 2014, Defendant Stan Standridge filed a second Motion to Dismiss, in response to Plaintiff's First Amended Complaint.  Plaintiff filed a response on October 21, 2014.  Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran.  Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means."  This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights.  Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time.  Plaintiff alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office.  He assumed the laughter was directed at him.  He again rang the bell.  When the door was opened, he said, "you don't have to laugh at me."  He then left the building.  Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police.  Although the exact conversation is not alleged, Plaintiff states that Detective Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office."  Nevertheless, Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

2

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene. No one answered the door. Plaintiff walked down the hall and began chatting with a receptionist in a nearby office. At some point, two Abilene police officers arrived. When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency. Plaintiff alleges that the officers started to handcuff him but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother." After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being. We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife. Plaintiff asserted his willingness to give his life to save the lives of others. In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide. However, during Plaintiff's preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman. After the interview, Officer Pruitt left Plaintiff's residence and returned with Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas.

Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change. Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code. The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health. The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis." On the same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County. At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change. Plaintiff alleges that Depakote has certain possible side effects. At the conclusion of the hearing, in which it was determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the Motion of Protective Order. Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to Stan Standridge, the Chief of Police for the Abilene Police Department.  First, Plaintiff alleges that Congressman Neugebauer agreed with Defendant Standridge to "silence, seize, and detain the Plaintiff in a mental health institution in order that he may be intimidated and marginalized of his rights guaranteed to him under the Constitution of the United States."  Second, Plaintiff alleges that Mr. Standridge "performed the overt act in pursuance of the agreement by . . . Officer Pruitt to perform a predetermined psychological evaluation of the Plaintiff through his false assertion the Plaintiff had made threats against Defendant Neugebauer."  Third, Plaintiff alleges that Officer Pruitt was aware that Plaintiff did not pose a threat to himself but nevertheless continued with the involuntary commitment process because Chief of Police Stan Standridge determined that there was probable cause to detain Plaintiff based on alleged threats Plaintiff had directed at Congressman Neugebauer.  Fourth, Plaintiff alleges that Chief of Police Stan Standridge directed Officer Pruitt to detain and arrest Plaintiff despite the fact that Mr. Standridge never came in contact with Plaintiff and lacked personal knowledge of threats allegedly made by Plaintiff. Fifth, Plaintiff alleges that "Defendant Abilene Behavioral Health used the initial statements and probable cause found by Chief of Police, Stan Standridge, as included by Judy McDowell in her 'Crisis Assessment.'"

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone.  *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).  A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does

require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

## DISCUSSION

In his First Amended Complaint, Plaintiff asserts six causes of action against Defendant Stan Standridge: (A) violation of 42 U.S.C. § 1983 based on alleged First, Fourth and Fourteenth Amendment violations, (B) false imprisonment, (C) civil conspiracy, (D) violation of Tex. Health & Safety Code § 573.001 (apprehension by a peace officer without a warrant), (E) violation of Tex. Health & Safety Code § 576.025 (administration of psychoactive medication) and (F) intentional infliction of emotional distress.

A. *42 U.S.C. § 1983*

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). A plaintiff can sue an individual state or municipal government official under § 1983 through one of two theories of liability: (1) an individual-capacity theory (sometimes referred to as "personal-capacity"), or (2) an official-capacity theory. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (discussing the importance of distinguishing between official-capacity and personal-capacity suits under § 1983). A § 1983 action is analyzed as an individual-capacity suit where the plaintiff seeks to impose personal liability on a government official for actions he or she takes under color of state law. *See id.* at 165. By contrast, an official capacity suit against an individual government official "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.*

Here, Plaintiff's First Amended Complaint includes language that suggests he is suing Mr. Standridge in his individual capacity. *See* Pl.'s Am. Compl. 1 ("STAN STANDRIDGE, an individual"); Pl.'s Am. Compl. 5 ("Defendant, Stan Standridge, is an individual who serves as the Police Chief of Abilene, Texas"). The Court will thus treat Plaintiff's claims as claims against Mr. Standridge in his individual capacity. In an individual capacity suit, the plaintiff must plead and show that the defendant (1) deprived plaintiff of rights secured by the

constitution or laws of the United States; (2) while acting under color of state law; and (3) caused injury by the deprivation. *See Batiste v. City of Beaumont,* 421 F. Supp. 2d 969, 981 (E.D. Tex. 2005) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984). In individual capacity § 1983 suits, the Fifth Circuit applies a heightened pleading standard, which requires Plaintiff to plead facts with particularity, focusing specifically on the conduct of the individual who caused the injury. *See Elliot v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985); *Batiste v. Layrisson*, CIV.A. 04-0607, 2005 WL 840468, at *3 (E.D. La. Apr. 1, 2005). This standard requires more than mere conclusory assertions. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).

Here, Plaintiff clearly alleges that Defendant Stan Standridge was acting by virtue of his authority as the Chief of Police for the City of Abilene when he allegedly ordered Officer Pruitt to detain Plaintiff. This is sufficient to satisfy the pleading requirements for the second element of a § 1983 individual capacity suit—that the individual was acting under color of state law. *See Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 981 (E.D. Tex. 2005). Plaintiff has also sufficiently alleged that Defendant's conduct caused Plaintiff injury—the third element of a § 1983 individual capacity suit—when Plaintiff was temporarily confined in a mental health facility against his will. Thus, the critical issue is whether Plaintiff has pled sufficient facts that would, under the heightened pleading standard articulated by the Fifth Circuit in *Elliot*, establish that Defendant Standridge's actions deprived Plaintiff of his federally-protected rights.

There are two ways a plaintiff can prove that a police chief like Defendant Standridge caused the deprivation of a federal right. The plaintiff can show that either (1) the defendant was personally involved in the acts causing the constitutional deprivation or (2) that there was a

"causal connection between the act of the police chief and the constitutional violation sought to be redressed." *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986). Plaintiff has failed to plead any facts that show Defendant Standridge was personally involved in Plaintiff's temporary detention and confinement in a mental health facility. Mr. Standridge was not present when Plaintiff was taken into custody and was not involved in any of the decisions made by Abilene Behavioral Health following Plaintiff's confinement. Indeed, Plaintiff states in his First Amended Complaint that "[a]t no relevant time of the acts complained of, did Defendant Stan Standridge come in contact with Plaintiff."

However, Plaintiff does allege that Defendant Standridge informed Abilene Police Officer Pruitt that Plaintiff had made threats against Congressman Neugebauer and then directed Officer Pruitt to detain and arrest Plaintiff. Such factual allegations, if true, would establish a causal connection between Defendant Standridge's actions and Plaintiff's temporary detention in a mental health facility. *See Hinshaw*, 785 F.2d at 1263. Although a causal connection may be established, the fundamental question is whether Plaintiff's First Amended Complaint pleads sufficient facts which would, if true, establish that Stan Standridge violated Plaintiff's First, Fourth, or Fourteenth Amendment rights when he ordered Plaintiff arrested for emergency commitment in a mental health facility.

### 1. Section 1983 claim based on alleged First Amendment violations

The First Amendment prohibits adverse governmental action against an individual in retaliation for the exercise of certain protected speech activities. *See Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). Here, it appears Plaintiff attempts to allege that Stan Standridge ordered Plaintiff's arrest and temporary confinement on April 24, 2014 in retaliation for certain speech that Plaintiff had made at some point in the past. To establish a First Amendment

retaliation claim, a plaintiff must show (1) that he engaged in constitutionally protected activity; (2) that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected conduct. *See Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002).

First, Plaintiff fails to articulate precisely what speech he engaged in that is constitutionally protected under the First Amendment.  Plaintiff's First Amended Complaint mentions the First Amendment only four times—each time in a conclusory passage that merely asserts that Plaintiff's First Amendment rights were violated—without specifying the protected speech Plaintiff allegedly engaged in.  Second, Plaintiff pleads no facts which would suggest that Stan Standridge's alleged decision to order Plaintiff's temporary detention was substantially motivated by Plaintiff's exercise of his First Amendment rights.  All that Plaintiff alleges is that Defendant Standridge relied on allegations that Plaintiff threatened Congressman Neugebauer when he decided to order Officer Pruitt to arrest Plaintiff.  Plaintiff has failed to plead facts which would, if true, establish that Defendant Standridge violated Plaintiff's First Amendment rights.  *See Bailey v. City of Jasper, Tex.*, 1:12-CV-153, 2012 WL 4969126, at *4-*5 (E.D. Tex. Sept. 24, 2012) (dismissing plaintiff's First Amendment retaliation claim under § 1983 because plaintiff pled no facts suggesting that defendant's actions were substantially motivated against her constitutionally protected speech).

### 2. *Section 1983 claim based on alleged Fourth Amendment violations*

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, prohibits unreasonable seizures by government officials.  *See* U.S. Const. amend. IV.  A seizure that triggers the protections of the Fourth Amendment occurs when government actors have, "by

10

means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). This includes seizures for the purpose of temporary commitment in a mental health facility. *See Martinez v. Smith*, No. 99-40285, 1999 WL 1095667, at *1 (5th Cir. Nov. 4, 1999) ("individuals have a Fourth Amendment right to be free from detention for psychological evaluation"); *In re Barnard*, 455 F.2d 1370, 1373-74 (D.C. Cir. 1971) (holding that the Fourth Amendment's prohibition is not limited to criminal arrests but instead applies in any case in which an individual is taken into custody against his or her will). A Fourth Amendment seizure is permitted if supported by probable cause. *See United States v. Place*, 462 U.S. 696, 700-01 (1983).

In Texas, a police officer is permitted to take a person into custody without a warrant if (1) the officer has reason to believe and does believe that a person is mentally ill and because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody. *See* Tex. Health & Safety Code Ann. § 573.001(a). The Fifth Circuit has held that in the context of this emergency detention statute, "probable cause exists where the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm." *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012). The Fifth Circuit has also noted that the existence of Tex. Health & Safety Code § 573.001(a) provides further support for a finding that police officers act with probable cause when they arrest an individual for temporary detention in a mental health facility. *See Martinez v. Smith*, No. 99-40285, 1999 WL 1095667, at *3 (5th Cir. Nov. 4, 1999) (holding that officers had probable cause to take plaintiff into custody and noting that "[§ 573.001) buttresses the officers'

argument that they acted within their clear authority"). Thus, at the motion to dismiss stage, the question is whether Plaintiff has alleged sufficient facts in his First Amended Complaint that would, if true, establish that Stan Standridge lacked the requisite probable cause needed to order Plaintiff's temporary detention under Tex. Health & Safety Code § 573.001(a) and the Fourth Amendment.

Here, Plaintiff makes the following allegations regarding Defendant Stan Standridge's role in Plaintiff's arrest and temporary confinement. First, Plaintiff alleges that Congressman Neugebauer and Stan Standridge made an agreement to seize Plaintiff and detain him in a mental health institution. Second, Plaintiff alleges that Stan Standridge falsely asserted that Plaintiff had made threats against Congressman Neugebauer. However, later in the complaint, Plaintiff states that "Stan Standridge . . . determined the department had probable cause," and asserts that Defendant Standridge merely lacked personal knowledge of threats made by Plaintiff. Third, Plaintiff alleges that Stan Standridge directed Officer Pruitt to detain and arrest Plaintiff based on Congressman Neugebauer's assertion that Plaintiff had made threats against him. Fourth, Plaintiff alleges that Officer Pruitt knew that Plaintiff was not a threat to himself but nevertheless made the decision to detain Plaintiff at the request of Stan Standridge.

Although these facts may show the "mere possibility of misconduct," that is not enough to survive a motion to dismiss where "the complained of conduct was more likely explained by, or even simply compatible with, an alternate, lawful act." *Travis v. City of Glenn Heights, Tex.*, 3:13-CV-01080-K, 2013 WL 5508662, at *1 (N.D. Tex. Oct. 3, 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 679-80 (2007)) (dismissing plaintiff's § 1983 claims based on alleged Fourth Amendment violations where plaintiff's conclusory allegations, if true, would not establish more than the mere possibility of misconduct). The facts in Plaintiff's complaint also

show that Plaintiff had visited Congressman Neugebauer's office repeatedly over a period of two years, was carrying exercise weights on at least one occasion, was alleged to have made threats directed at Congressman Neugebauer, was banned from the building in which Congressman Neugebauer's office was located, and gave a television interview after the leaving the building in which he described United States military veterans as his "brothers." Furthermore, Plaintiff's complaint references a statement released by Congressman Neugebauer which stated that Plaintiff's behavior "has given us reason to be concerned for his well-being." And before Officer Pruitt even made the decision to detain Plaintiff, the complaint alleges that Officer Pruitt observed Plaintiff state that he was willing to give his life to save the lives of others.

These facts suggest that the alleged seizure Plaintiff complains of was not the result of misconduct, but was more likely explained by, and compatible with, an alternate lawful act—namely, the authority of a police officer to temporarily detain an individual under Tex. Health & Safety Code § 573.001(a) where the officer believes the individual is mentally ill and poses a substantial risk of harm to himself or others. *See Travis*, 2013 WL 5508662, at *1. These facts suggest not only that Defendant Standridge had the authority to order Plaintiff's detention under Tex. Health & Safety Code § 573.001(a), but also that the decision was based on probable cause and was thus consistent with the Fourth Amendment. *See Martinez v. Smith*, No. 99-40285, 1999 WL 1095667, at *2 (5th Cir. Nov. 4, 1999) (holding that officers had probable cause to temporarily detain plaintiff in a mental health facility based on (1) the existence of § 573.001, (2) statements made by third parties about alleged suicidal threats, and (3) the officers' observations of plaintiff). Because the facts alleged in Plaintiff's First Amended Complaint, if true, would not establish more than the mere possibility of misconduct, and because Plaintiff's seizure was more likely explained by lawful conduct—temporary detention under § 573.001—the Court dismisses

Plaintiff's § 1983 claim based on alleged Fourth Amendment violations. *See Travis*, 2013 WL 5508662, at *1.

### 3. Section 1983 claim based on alleged Fourteenth Amendment violations

Plaintiff does not specify whether his Fourteenth Amendment claim is based on the Equal Protection Clause or the Due Process Clause—indeed, Plaintiff's First Amended Complaint mentions the Fourteenth Amendment only five times and does so in cursory and conclusory language. Because the Supreme Court has established that involuntary commitment in a mental health facility can constitute a deprivation of liberty that requires the protections of due process, the Court will assume that Plaintiff attempts to allege a procedural due process claim. *See Addington v. Tex.*, 441 U.S. 418, 425 (1979) ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); *Dahl v. Akin*, 630 F.2d 277, 279 (5th Cir. 1980). To prove a procedural due process violation, a plaintiff must allege: (1) the existence of a liberty or property interest that has been subject to interference by the state, and (2) that the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1990).

Here, Plaintiff has clearly alleged facts sufficient to satisfy the first element of a procedural due process claim—Plaintiff alleges that his liberty interest was interfered with by Stan Standridge when he was arrested and temporarily detained in a mental health facility against his will. However, Plaintiff fails to plead any facts which would establish that the procedures utilized by the Defendant Standridge to deprive him of his liberty were constitutionally insufficient. Beyond general assertions that Defendants have violated Plaintiff's Fourteenth Amendment rights, Plaintiff fails to explain how his procedural due process rights were violated. Accordingly, the Court dismisses Plaintiff's § 1983 claim based on alleged Fourteenth

Amendment violations. *See Kinzie v. Dall. Cnty. Hosp. Dist.*, 239 F. Supp. 2d 618, 638 (N.D. Tex. 2003), *aff'd*, 106 F. App'x 192 (5th Cir. 2003) (dismissing plaintiff's § 1983 procedural due process claim under Rule 12(b)(6) where plaintiff failed to allege that he was entitled to procedural due process and failed to explain how his procedural due process rights were violated).

### B.   FALSE IMPRISONMENT

To prevail on a claim of false imprisonment, a plaintiff must show (1) willful detention by the defendant; (2) without plaintiff's consent; and (3) without authority of law. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Here, Plaintiff has failed to include any factual allegations in his complaint which would suggest that Defendant Standridge willfully detained Plaintiff. Indeed, Plaintiff asserts in his First Amended Complaint that Stan Standridge "at no point in time had any verbal or physical contact with Plaintiff." Furthermore, Plaintiff has failed to show that the alleged detention was performed in the absence of the authority of law. *See Wal-Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). The Texas Mental Health Code allows law enforcement officials to make a temporary detention of a person without a warrant if (1) the officer has reason to believe the person is mentally ill, (2) the officer has reason to believe that the person poses a substantial risk of serious harm to himself or others, and (3) the officer believes that there is not sufficient time to obtain a warrant. *See* Tex. Health & Safety Code Ann. § 573.001(a). Because Plaintiff has failed to allege facts showing that Defendant Standridge willfully detained Plaintiff and because Plaintiff was taken into custody under the authority of Tex. Health & Safety Code § 573.001(a), Plaintiff has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court dismisses Plaintiff's false imprisonment claim against Defendant Stan Standridge.

## C.  CIVIL CONSPIRACY

To prevail on a claim of civil conspiracy under Texas law, a plaintiff must show (1) a combination of two or more persons, (2) an object to be accomplished which is unlawful or by unlawful means, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  To survive a Rule 12(b)(6) motion to dismiss on a civil conspiracy claim, a plaintiff must plead enough facts to satisfy both the civil conspiracy claim and the underlying tort on which the conspiracy claim is based. *See Berry v. Indianapolis Life Ins. Co.*, 638 F. Supp. 2d 732, 736 (N.D. Tex. 2009) (noting that civil conspiracy under Texas law is a derivative tort because a defendant's liability for conspiracy depends on participation in an underlying tort); *see also Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

Here, the underlying tort that Plaintiff appears to base his civil conspiracy claim on is Defendant Standridge's alleged violation of 42 U.S.C. § 1983.  *See* Pl.'s Am. Compl. 33 ("[Congressman] Neugebauer agreed with Abilene Chief of Police Stan Standridge to silence, seize, and detain the Plaintiff in a mental health institution in order that he may be intimidated and marginalized of his rights guaranteed to him under the Constitution of the United States").  However, this Court has already ruled that the allegations in Plaintiff's First Amended Complaint fail to state a § 1983 claim against Defendant Standridge upon which relief can be granted. *See* section (A), *supra*.  Because Plaintiff has failed to plead enough facts to state a claim for the underlying tort on which the civil conspiracy claim is based, the Court dismisses Plaintiff's civil conspiracy claim against Defendant Standridge under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## D.  TEX. HEALTH & SAFETY CODE § 573.001

Plaintiff also attempts to plead a cause of action under Tex. Health & Safety Code § 573.001, which outlines the requirements for taking a mentally ill individual into custody without a warrant.  Defendant Standridge moves to dismiss this claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Tex. Health & Safety Code § 573.001 is a state criminal statute and that exclusive jurisdiction for prosecuting such actions lies with the Texas state courts.

Section 573.001 does not create a private cause of action—it is a criminal statute and only the state of Texas may prosecute individuals for violation of the statute.  *See* Tex. Health & Safety Code Ann. § 571.021 ("[t]he state attorney general and the district and county attorneys within their respective jurisdictions shall prosecute violations of this subtitle [the Texas Mental Health Code]"); Tex. Health & Safety Code Ann. § 571.020(c) (listing punishments involving monetary fines and jail time for violation of any provision of the Texas Mental Health Code).  This Court lacks jurisdiction to prosecute such state law crimes.  Although 18 U.S.C. § 3231 gives "the district courts of the United States" original jurisdiction over "all offenses against the laws of the United States," it specifically notes that "[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."  18 U.S.C. § 3231.  And in Texas, the Texas state courts have exclusive jurisdiction over state criminal statutes.  *See* Tex. Code Crim. Proc. Ann. art. 4.01.  Furthermore, the violation of a criminal statute does not give rise to a private cause of action in favor of the victim of the crime.  *See Haffke v. U.S. Atty. Gen.*, 3-01-CV-2515-D, 2002 WL 122521, at *2 (N.D. Tex. Jan. 11, 2002) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App. 2001).

Although the Texas Mental Health Code permits the assessment of civil penalties in addition to criminal penalties, an action to recover civil penalties can only be brought by a governmental entity—the mere existence of a civil penalties provision in the Texas Mental Health Code does not create a private cause of action. *See* Tex. Health & Safety Code Ann. § 571.023(b)-(d) (authorizing the Texas Department of State Health Services, the Texas Attorney General, and any district or county attorney to institute a suit to recover civil penalties); *id.* § 571.023(f) (providing that any civil penalties collected shall be deposited in either the general revenue fund of the state of Texas or the general fund of the county in which the suit was heard). Accordingly, Plaintiff's claim under Tex. Health & Safety Code § 573.001 is dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

### E.   TEX. HEALTH & SAFETY CODE § 576.025

Plaintiff also attempts to plead a cause of action under Tex. Health & Safety Code § 576.025(b)(1)-(4), which outlines the procedures required to obtain consent from a patient for the administration of psychoactive medication. Defendant Standridge moves to dismiss this claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Tex. Health & Safety Code § 576.025 is a state criminal statute and that exclusive jurisdiction for prosecuting such actions lies with the Texas state courts. Plaintiff's claim is dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction for the same reasons as outlined in section (D), *supra.*

### F.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress

18

that the plaintiff suffered was severe." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)). To satisfy the second element of an intentional infliction of emotional distress claim, the defendant's conduct must be "so extreme in degree, or so outrageous in character, as to go beyond all bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community." *Brown v. DaimlerChrysler Corp.*, CIV. A. 399CV1286D, 1999 WL 766021, at *2 (N.D. Tex. Sept. 24, 1999) (citing *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993)).

Plaintiff has included no facts in his First Amended Complaint which would suggest that Defendant Standridge intentionally acted in a manner that was so extreme and outrageous as to go beyond all bounds of decency. Indeed, Plaintiff's only factual allegation against Defendant Standridge in his section titled "Defendants' Conduct was Extreme and Outrageous" is an assertion that Defendant Standridge ordered Officer Pruitt to detain Plaintiff despite lacking personal knowledge of threats made by Plaintiff. This factual allegation fails to satisfy the requirements for pleading a claim of intentional infliction of emotional distress. *See Hanners v. Davies*, 4:01-CV-0327-E, 2001 WL 803702, at *3 (N.D. Tex. July 12, 2001) (granting defendant's motion to dismiss plaintiff's intentional infliction of emotional distress claim where plaintiff failed to provide any evidence of defendant's extreme and outrageous conduct and instead made a general assertion that defendant inflicted mental distress). Plaintiff's intentional infliction of emotional distress claim against Defendant Standridge is dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## G.   OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court grants a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the

defect by amending the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim").  Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by the Defendants in their respective motions to dismiss.  Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action.  Given the foregoing, those claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

## CONCLUSION

The Motion to Dismiss filed by Defendant Stan Standridge is GRANTED.  Plaintiff's claims against Defendant Stan Standridge are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed this ___31st___ day of October, 2014.


**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**

21