IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-cv-0093-J |
| | § | |
| ROBERT RANDOLPH NEUGEBAUER, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants: Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The complaint lists seventeen separate claims arising out of Plaintiff's temporary confinement in a mental health facility.

Plaintiff later filed an amended complaint and then followed that filing with a Motion for Leave to File Amended Pleadings, which this Court granted on September 18, 2014. On October 2, 2014, the United States filed a Notice of Substitution, seeking to substitute the United States for Defendant Zimmerman as to counts Seven, Eleven, and Twelve in Plaintiff's First Amended

Complaint. On October 3, 2014, this Court ordered the United States substituted for Defendant Zimmerman on counts Seven, Eleven, and Twelve, and dismissed those same counts as against Defendant Zimmerman. This opinion addresses the motion to dismiss filed by Defendant United States of America on October 2, 2014 as to counts Seven, Eleven, and Twelve of Plaintiff's First Amended Complaint. Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran. Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means." This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights. Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time. Plaintiff alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office. He assumed the laughter was directed at him. He again rang the bell. When the door was opened, he said, "you don't have to laugh at me." He then left the building. Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police. Although the exact conversation is not alleged, Plaintiff states that Detective Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office." Nevertheless,

Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene. No one answered the door. Plaintiff walked down the hall and began chatting with a receptionist in a nearby office. At some point, two Abilene police officers arrived. When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency. Plaintiff alleges that the officers started to handcuff him but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother." After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being. We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife. Plaintiff asserted his willingness to give his life to save the lives of others. In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide. However, during Plaintiff's preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman. After the interview, Officer Pruitt left Plaintiff's residence and returned with

Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas. Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change. Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code. The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health. The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis." On the same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County. At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change. Plaintiff alleges that Depakote has certain possible side effects. At the conclusion of the hearing, in which it was determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the

Motion of Protective Order. Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to the United States. First, Plaintiff alleges that United States Capitol Police Detective William Zimmerman called Plaintiff following Plaintiff's 2012 visit to Congressman Neugebauer's offices and "threatened Plaintiff with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office." Second, Plaintiff alleges that Congressman Neugebauer induced Detective Zimmerman to call Plaintiff regarding Plaintiff's visit to the Congressman's office. Finally, Plaintiff alleges that Detective Zimmerman called Plaintiff in order to silence and intimidate him.

The United States, as part of its motion to dismiss, also filed a *Declaration of James W. Joyce*, Senior Counsel for the United States Capitol Police Office of the General Counsel. In the declaration, Mr. Joyce states that the United States Capitol Police did not receive any Federal Tort Claims Act claims from Larry Russell Gordon during the period from January 1, 2012 to October 1, 2014.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). The plaintiff, as the party asserting jurisdiction, bears the burden of proving jurisdiction by a preponderance of the evidence. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). The court can dismiss for lack of subject matter

jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein,* 691 F.3d 710, 714 (5th Cir. 2012) (*quoting Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)). Where the defendant supports the motion with evidence, the motion is a "factual" rather than a "facial" attack, and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson,* 645 F.2d at 413.

## DISCUSSION

On October 3, 2014, the United States of America was substituted as Defendant in place of Detective William Zimmerman as to counts Seven, Eleven, and Twelve in Plaintiff's First Amended Complaint.  Plaintiff thus asserts three causes of action against the United States: (A) false imprisonment, (B) violation of Tex. Health & Safety Code § 576.025 (administration of psychoactive medication), and (C) intentional infliction of emotional distress.

### A. FALSE IMPRISONMENT

To prevail on a claim of false imprisonment, a plaintiff must show (1) willful detention by the defendant; (2) without plaintiff's consent; and (3) without authority of law. *See Wal-Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex. 2002).  Defendant seeks to dismiss this claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that state tort claims can only be pursued against the United States in conformity with the Federal Tort Claims Act and that Plaintiff's failure to file an administrative tort claim with the United States Capitol Police prior to bringing this suit—as required by 28 U.S.C. § 2675(a)—deprives this Court of jurisdiction over Plaintiff's state law tort claims against the United States.

6

As a general rule, the United States is immune from suit unless it consents to be sued. *See Lonatro v. United States*, 714 F.3d 866, 869 (5th Cir. 2013). This means that consent to be sued—through a waiver of sovereign immunity—is a prerequisite for jurisdiction over civil claims against the United States. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Federal Tort Claims Act (FTCA) provides a limited waiver of sovereign immunity "for torts committed by [United States] employees in circumstances where, if the Government were a private person, the Government would be liable under state law." *Martin v. Halliburton*, 618 F.3d 476, 486 (5th Cir. 2010). Where the United States (1) certifies that a federal employee was acting in the scope of his employment when he committed the acts forming the basis of the lawsuit against him and where (2) the United States is substituted as a defendant in place of the federal employee under 28 U.S.C. § 2679(d)(1), the lawsuit may only proceed against the United States in conformity with the FTCA. *See Mitchell v. Carlson*, 896 F.2d 128, 134 (5th Cir. 1990) ("[a]n action against a federal employee who has been certified as acting in the scope of her employment must proceed exclusively against the United States under the FTCA"); *Lopez v. Pena*, 2-12-CV-165-J, 2012 WL 6200223, at *1 (N.D. Tex. Dec. 12, 2012) (applying the FTCA to plaintiff's claims where the Attorney General certified that the federal employee was acting within the scope of his employment).

FTCA actions "shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993). The Fifth Circuit strictly construes this administrative exhaustion rule as a jurisdictional requirement, rather than a procedural defect that may be overlooked as a needless formality or

corrected by amended pleadings, because it is a condition precedent to a waiver of sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) (holding that the terms of the United States' consent to be sued define a court's jurisdiction to entertain the suit); *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1306-07 (5th Cir. 1987) (holding that it would be inappropriate for a district court to hold a complaint in abeyance until an administrative claim brought by a plaintiff under the FTCA was filed and denied); *Reynolds v. United States*, 748 F.2d 291, 292-93 (5th Cir. 1984) (an amended complaint cannot cure the jurisdiction defect caused by a failure to exhaust administrative remedies under the FTCA).

Here, pursuant to 28 U.S.C. § 2679(d)(1), the United States has been substituted as a defendant in place of Detective William Zimmerman as to counts Seven, Eleven, and Twelve of Plaintiff's First Amended Complaint. There is no evidence that Plaintiff has complied with 28 U.S.C. § 2675(a) by filing an administrative claim with the United States Capitol Police. Therefore, the United States argues that this Court lacks jurisdiction over counts Seven, Eleven, and Twelve. The United States supports its motion to dismiss with the declaration of James W. Joyce, Senior Counsel for the United States Capitol Police Office of the General Counsel, stating that the Plaintiff has not filed an administrative tort claim under the FTCA with the United States Capitol Police as of October 1, 2014. Because the United States has only consented to be sued on these claims after a plaintiff has exhausted his administrative remedies, the Court dismisses Plaintiff's claims against the United States under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. See *Lopez v. Pena*, 2-12-CV-165-J, 2012 WL 6200223, at *2 (N.D. Tex. Dec. 12, 2012) (dismissing plaintiff's state law claims against the United States for failure to exhaust administrative remedies under the FTCA, based on a United States official's declaration that plaintiff had not filed an administrative claim with the appropriate federal agency).

## B. *TEX. HEALTH & SAFETY CODE § 576.025*

Plaintiff also attempts to plead a cause of action against the United States under Tex. Health & Safety Code § 576.025(b)(1)-(4), which outlines the procedures required to obtain consent from a patient for the administration of psychoactive medication. Section 576.025 does not create a private cause of action—it is a criminal statute and only the state of Texas may prosecute individuals for violation of the statute. *See* Tex. Health & Safety Code Ann. § 571.021 ("[t]he state attorney general and the district and county attorneys within their respective jurisdictions shall prosecute violations of this subtitle [the Texas Mental Health Code]"); Tex. Health & Safety Code Ann. § 571.020(c) (listing punishments involving monetary fines and jail time for violation of any provision of the Texas Mental Health Code).

This Court lacks jurisdiction to prosecute such state law crimes. Although 18 U.S.C. § 3231 gives "the district courts of the United States" original jurisdiction over "all offenses against the laws of the United States," it specifically notes that "[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof." 18 U.S.C. § 3231. And in Texas, the Texas state courts have exclusive jurisdiction over state criminal statutes. *See* Tex. Code Crim. Proc. Ann. art. 4.01. Furthermore, the violation of a criminal statute does not give rise to a private cause of action in favor of the victim of the crime. *See Haffke v. U.S. Atty. Gen.*, 3-01-CV-2515-D, 2002 WL 122521, at *2 (N.D. Tex. Jan. 11, 2002) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App. 2001).

Although the Texas Mental Health Code permits the assessment of civil penalties in addition to criminal penalties, an action to recover civil penalties can only be brought by a governmental entity—the mere existence of a civil penalties provision in the Texas Mental

Health Code does not create a private cause of action. *See* Tex. Health & Safety Code Ann. § 571.023(b)-(d) (authorizing the Texas Department of State Health Services, the Texas Attorney General, and any district or county attorney to institute a suit to recover civil penalties); *id.* § 571.023(f) (providing that any civil penalties collected shall be deposited in either the general revenue fund of the state of Texas or the general fund of the county in which the suit was heard). Accordingly, Plaintiff's claims under the Texas Mental Health Code are dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)). Defendant seeks to dismiss this claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that state tort claims can only be pursued against the United States in conformity with the Federal Tort Claims Act and that Plaintiff's failure to file an administrative tort claim with the United States Capitol Police prior to bringing this suit—as required by 28 U.S.C. § 2675(a)—deprives this Court of jurisdiction over Plaintiff's state law tort claims against the United States. Plaintiff's claim is dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction for the same reasons as outlined in section (A), *supra*.

### D. OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court grants a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the

defect by amending the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim"). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by Defendants in their respective motions to dismiss. Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action. Given the foregoing, those claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

## CONCLUSION

The Motion to Dismiss filed by Defendant United States of America is GRANTED. Plaintiff's claims against the Defendant are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed this _31st_ day of October, 2014.

*[signature]*
MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE