## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-cv-0093-J |
| | § | |
| ROBERT RANDOLPH NEUGEBAUER, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants: Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The complaint listed seventeen separate claims arising out of Plaintiff's temporary confinement in a mental health facility. This opinion addresses the motion to dismiss filed by John D. Crowley, a physician employed by Abilene Behavioral Health, LLC.

On July 21, 2014, Defendant Crowley filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim, seeking this Court's dismissal of Plaintiff's claims against him. Plaintiff filed a response to Defendant's motion on August 10, 2014. Defendant filed a reply on August 22, 2014. Before this Court could rule on Defendant's Motion to

Dismiss, Plaintiff filed an amended complaint and then followed that filing with a Motion for Leave to File Amended Pleadings, which this Court granted on September 18, 2014.   On September 30, 2014, Defendant filed a second Motion to Dismiss, in response to Plaintiff's First Amended Complaint.   Plaintiff filed a response on October 22, 2014.   Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran.   Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means."   This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights.   Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time.   Plaintiff alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office.   He assumed the laughter was directed at him.   He again rang the bell.   When the door was opened, he said, "you don't have to laugh at me."   He then left the building.   Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police.   Although the exact conversation is not alleged, Plaintiff states that Detective Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office."   Nevertheless,

Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene. No one answered the door. Plaintiff walked down the hall and began chatting with a receptionist in a nearby office. At some point, two Abilene police officers arrived. When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency. Plaintiff alleges that the officers started to handcuff him but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother." After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being. We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife. Plaintiff asserted his willingness to give his life to save the lives of others. In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide. However, during Plaintiff's preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman. After the interview, Officer Pruitt left Plaintiff's residence and returned with

Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas. Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change. Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code. The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health. The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis." On the same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County. At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change. Plaintiff alleges that Depakote has certain possible side effects. At the conclusion of the hearing, in which it was determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the

Motion of Protective Order. Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to John D. Crowley. First, Plaintiff alleges that Dr. John Crowley performed Plaintiff's preliminary examination. Second, Plaintiff alleges that when Abilene Behavioral Health, LLC submitted its commitment request to the Taylor County Attorney's Office, the request included a Physician's Certificate of Medical Examination For Mental Illness with an affidavit sworn in Dr. John Crowley's name. In the affidavit, Dr. Crowley diagnosed Plaintiff as suffering from "Major Depressive Order, recurrent with severe psychosis" and based this finding on Abilene Police Officer Pruitt's assertion that Plaintiff had made threats against Congressman Neugebauer. Plaintiff also alleges that the commitment request was sent to the Taylor County Attorney's Office by Dr. Duane C. Miller despite the fact that Dr. John Crowley was the sole physician that had the authority to further detain Plaintiff. Third, Plaintiff alleges that Dr. Crowley submitted an Application for Court Ordered Temporary Mental Health Services, presumably to Taylor County. Fourth, Plaintiff alleges that "John Dale Crowley . . . sought to restrain, and did restrain, Plaintiff's liberty as [a] state actor[] in violation of the First, Fourth, and Fourteenth Amendments."

In three sections outlining his civil RICO claims against Defendants, Plaintiff makes numerous factual assertions applicable to all Defendants listed in the RICO count, including Dr. John Crowley. First, Plaintiff alleges that "[t]he conduct of the Defendants violates the provisions of 18 U.S.C. § 1962(c)." Second, Plaintiff alleges that the Defendants created an association-in-fact enterprise whose purpose was to deprive Plaintiff of his liberty in order to fraudulently obtain payment from insurance companies and the Medicare program. Plaintiff then

lists twenty-four different federal and state crimes which he claims were committed by the Defendants and which he claims represent predicate acts that form a pattern of racketeering activity. Plaintiff also alleges that "Defendants conspired among themselves" to engage in the lengthy list of predicate act crimes and that Defendants "agreed to . . . withhold Plaintiff's liberty . . . for payment of funds from government entities and medical insurance programs." Plaintiff further states that each Defendant voluntarily and knowingly joined the conspiracy.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

## DISCUSSION

In his First Amended Complaint, Plaintiff asserts eight causes of action against Dr. John D. Crowley: (A) violation of 42 U.S.C. § 1983 based on alleged First, Fourth and Fourteenth Amendment violations, (B) a civil RICO claim under 18 U.S.C. § 1964(c) that Plaintiff lists in three separate counts, (C) false imprisonment, (D) violation of Tex. Health & Safety Code §§ 573.025 (Rights of Persons Apprehended, Detained, or Transported for Emergency Detention) and 576.006 (Rights Subject to Limitation), (E) violation of Tex. Health & Safety Code § 576.025 (Administration of Psychoactive Medication), and (F) intentional infliction of emotional distress.

### A.  42 U.S.C. § 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and laws of the United States and that the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).  The requirement that the deprivation occur under color of state law is also known as the "state action" requirement.  *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) ("a section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury. . . . In such cases,

the 'under color of law' and state action inquiries merge into one"). A private party will be considered a state actor for § 1983 purposes only in rare circumstances. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Defendant seeks to dismiss Plaintiff's § 1983 claims against him under Fed. R. Civ. P. 12(b)(6) because Plaintiff's First Amended Complaint fails to allege facts that, if true, would amount to a violation of § 1983.

There are two ways that a private actor can be considered a state actor for purposes of imposing § 1983 liability. First, the plaintiff can show that the private actor was implementing an official government policy. *See Rundus v. City of Dall., Tex.*, 634 F.3d 309, 312 (5th Cir. 2011). Plaintiff has included no facts in his First Amended Complaint which, if true, would show that any of the governmental units sued by Plaintiff had an official policy that caused the alleged constitutional violations—much less that Defendant implemented that policy. Indeed, on the same day as this opinion was released, this Court also published orders dismissing § 1983 claims against the City of Abilene, the Abilene Police Department, the Betty Hardwick Center, Taylor County, Shackelford County, Callahan County, Jones County, and Stephens County, in part because Plaintiff failed to plead facts which would show the existence of an official government policy, custom, or practice that deprived Plaintiff of his constitutional rights.

The Court will thus focus its analysis on the second method for proving state action under § 1983—a showing that the private entity's actions are fairly attributable to the government. *See Rundus*, 634 F.3d at 312. This is also known as the "attribution test." The Supreme Court has articulated a two-part inquiry for determining whether a private party's actions are fairly attributable to the government: (1) "the deprivation [of plaintiff's constitutional rights] must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) "the party charged

with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Here, Defendant John D. Crowley is a private citizen and an employee of Abilene Behavioral Health. Thus Defendant can only be liable under § 1983 if his conduct that forms the basis of this lawsuit is fairly attributable to the state of Texas or one of its political subdivisions.

The Supreme Court utilizes three different tests for determining whether the conduct of a private actor can be fairly attributable to a state actor under the second prong of the attribution test: (1) the nexus or joint-action test, (2) the public function test, and (3) the state coercion or encouragement test. *See Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003); *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (describing the three tests as applicable to the resolution of the second prong of the attribution test articulated by the Supreme Court in *Lugar*).

*1. Nexus/joint-action test*

Under the nexus test, a private party will be considered a state actor "where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise,'" and the actions of the private party can be treated as that of the state itself. *Bass*, 180 F.3d at 242; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The mere existence of state involuntary commitment statutes does not create a close nexus between the state and a private hospital such that the hospital—or its employees— can be classified as state actors for § 1983 purposes. *See Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992); *see also Goss v. Memorial Hosp. Sys.*, 789 F.2d 353, 356 (5th Cir.1986) (holding that the mere existence of a state statute does not automatically result in state action).

9

Aside from the existence of state involuntary commitment statutes, Plaintiff has pled no

facts which would suggest that any state governmental entity has "insinuated itself into a position

of interdependence" with Dr. John D. Crowley.  Indeed, Plaintiff fails to plead any facts which

would show that Defendant ever interacted or communicated with the Abilene Police

Department, the City of Abilene, the Betty Hardwick Center, or the counties of Taylor, Callahan,

Shackelford, Jones, and Stephens—aside from the affidavit filed by Dr. Crowley with the Taylor

County Attorney's Office in support of Abilene Behavioral's commitment request.  At most,

Plaintiff has alleged that Abilene Police officers brought Plaintiff to Abilene Behavioral and left

him there in the care of mental health professionals, including Dr. Crowley.  This brief

interaction does not suggest any type of joint participation or interdependence between Dr.

Crowley and the state actor defendants in this case.  *See Lewis v. Law-Yone*, 813 F. Supp. 1247,

1254 (N.D. Tex. 1993) (finding that plaintiff failed to plead facts showing the requisite

insinuation necessary to satisfy the nexus test where the only pleaded relationship between the

defendants and the state was the existence of a voluntary commitment statute).  Plaintiff has

failed to plead facts that would satisfy the nexus test for state action under § 1983.

### 2.  *Public function test*

Under the public function test, a "private entity may be deemed a state actor when that

entity performs a function which is traditionally the exclusive province of the state."  *Bass v.*

*Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999).  Several circuits, including the Fifth

Circuit have held that "the commitment and treatment of the mentally ill could not be deemed a

function traditionally within the exclusive province of the state."  *Id.* at 243; *see also Harvey v.*

*Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992) ("[w]e are unwilling to categorize involuntary

commitment in Georgia as a function so reserved to the state that action under the commitment

statute transforms a private actor into a state actor"); *Spencer v. Lee*, 864 F.2d 1376, 1381 (7th

Cir. 1989).

Here, Defendant Dr. John D. Crowley is a private citizen employed by a private corporate

entity—Abilene Behavioral Health, LLC.  After receiving Plaintiff as a patient, Abilene

Behavioral initiated commitment proceedings in the County Court of Taylor County.  The mere

fact that a private hospital or a private citizen is regulated by involuntary commitment statutes

and initiates civil commitment procedures against another person does not transform that hospital

or person into a state actor.  *See Bass*, 180 F.3d at 242 (citing *Dahl v. Akin*, 630 F. 2d 277, 281

(5th Cir. 1980)).  Although it is true that Plaintiff was brought to Abilene Behavioral after being

interviewed by an Abilene Police officer and an employee of the government-operated Betty

Hardwick Center, that alone cannot transform the actions of Defendant into a public function.

*See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 168, 171 (3d Cir. 2004) (fact that police

went to Plaintiff's home and took Plaintiff into custody did not transform hospital's action of

applying for emergency commitment into a public function).  Ultimately it was a private

hospital—Abilene Behavioral—that made the decision to detain Plaintiff and apply for a

temporary commitment request.  Plaintiff has failed to plead facts showing that Defendant Dr.

John D. Crowley was performing a function that was traditionally the exclusive province of the

state when he examined Plaintiff and submitted an affidavit in support of Abilene Behavioral's

commitment request.

### 3.  *State coercion or encouragement test*

Under the state coercion test, "a State normally can be held responsible for a private

decision only when it has exercised coercive power or has provided such significant

encouragement, either overt or covert, that the choice must in law be deemed to be that of the

State." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999). Again, several circuit courts have found that the use, by hospitals, of state involuntary commitment statutes to detain mentally ill individuals does not compel or encourage involuntary commitment. *See id.* at 243 (holding that state involuntary commitment statute does not compel or encourage involuntary commitment in a manner sufficient to establish state action under § 1983); *Harvey v. Harvey*, 949 F.2d 1127, 1130-31 (11th Cir. 1992) (same); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5-6 (1st Cir. 2005) (same); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (same).

However, some courts have found that state coercion or compulsion can be found where the plaintiff establishes that the private defendants were engaged in a conspiracy with state officials. *See Gallegos v. Slidell Police Dep't*, 07-6636, 2008 WL 1794170, at *4 (E.D. La. Apr. 18, 2008) (noting that the state compulsion test could be satisfied by showing that a private citizen conspired with state actors to violate plaintiff's constitutional rights); *see also Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (holding that a private actor could be held liable under § 1983 if plaintiff could establish that the private actor engaged in a conspiracy with state actors to involuntarily commit her in violation of her constitutional rights).

To establish such a conspiracy, the plaintiff must show that the private and public actors entered into an agreement to commit an illegal act. *See Tebo*, 550 F.3d at 496. At the motion to dismiss stage, the plaintiff must "allege specific facts to show an agreement." *See id.* (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004)). Here, Plaintiff has included no facts in his First Amended Complaint which would suggest that Defendant John D. Crowley entered into an agreement or was acting at the direction of any government official when Abilene Behavioral submitted a temporary commitment request to Taylor County. There are simply no

facts which would, if true, show the existence of an illegal agreement between the Defendant and a governmental entity. Plaintiff has thus failed to plead facts showing that Defendant John D. Crowley was coerced or encouraged by any governmental entity to detain Plaintiff in a mental health facility. *See Gallegos v. Slidell Police Dep't*, 07-6636, 2008 WL 1794170, at *4 (E.D. La. Apr. 18, 2008) (holding that plaintiff failed to plead facts showing that the private defendants were engaged in a conspiracy with state officials because there were no allegations that defendants took action due to the direction of police officers).

In sum, Plaintiff's First Amended Complaint is devoid of the factual allegations necessary to plead state action under the nexus test, the public function test, or the state coercion or encouragement test. Plaintiff has failed to establish the necessary state action required to hold a private actor liable under § 1983. Accordingly, Plaintiff's § 1983 claims against Defendant John D. Crowley are dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### B.   18 U.S.C. § 1964(C) (CIVIL RICO)

The Racketeer Influenced and Corrupt Organizations Act (RICO) is a criminal statute targeted at the infiltration of organized crime into legitimate businesses. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The civil enforcement provisions of RICO are found at 18 U.S.C. § 1964(c). In order to be entitled to relief in a RICO civil action, a plaintiff must show a violation of one or more of the four subsections of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). Here, Plaintiff attempts to assert a civil RICO claim against Defendant Crowley by pleading (1) violations of 18 U.S.C. § 1962(c) (participation in a criminal enterprise that conducts business through a pattern of racketeering activity) and (2) § 1962(d) (conspiring to violate subsections (a), (b), or (c) of § 1962). Defendant seeks dismissal of Plaintiff's civil RICO claims under Fed.

R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to allege facts showing that there was an enterprise and has generally fail to plead any specific facts that would support his conclusory assertions that Defendant satisfied each of the elements of a civil RICO claim.

*1.  Violation of 18 U.S.C. § 1962(c)*

"Subsection 1962(c) prohibits persons employed by or associated with any enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996). To state a valid claim upon which relief can be granted under § 1962(c), a plaintiff must allege facts that show (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993); *Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2010 WL 5105925, at *3 (N.D. Tex. Dec. 14, 2010).

To establish the second element of a § 1962(c) claim—a pattern of racketeering activity—a plaintiff must allege facts that show (1) the violation of two or more "predicate acts" of racketeering activity enumerated in 18 U.S.C. § 1961(1), and (2) that the predicate acts form a pattern because they are related to each other and they have continuity. *See Burzynski*, 989, F.2d at 742; *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11-CV-0870-D, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012). For state law predicate acts "only crimes prohibited in state statutes *and* listed in section 1961(1) can serve as predicate offenses for the purpose of a RICO claim." *Pan Am. Mar., Inc. v. Esco Marine, Inc.*, C.A. B-04-188, 2005 WL 1155149, at *4 (S.D. Tex. May 10, 2005) (emphasis added). Such state law crimes include "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance." 18 U.S.C. § 1961(a); *Pan Am. Mar., Inc.*, 2005 WL 1155149, at *4.

14

For federal predicate acts, only those federal statutes specifically listed in section 1961(1) qualify as predicate acts for purposes of establishing a pattern of racketeering activity. *See Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1002 (S.D. Tex. 1995) ("[a]ny act that does not fall within the purview of RICO's definition of predicate offenses is not an act of 'racketeering activity'"); *Anael v. Interstate Brands Corp.*, 02 C 5192, 2003 WL 21995183, at *7 (N.D. Ill. Aug. 18, 2003) (holding that plaintiff failed to allege the predicate acts necessary to establish a pattern of racketeering activity where plaintiff alleged OSHA violations—which are not listed in 18 U.S.C. § 1961(1)); *Segarra v. Messina*, 153 F.R.D. 22, 30 on reconsideration, 158 F.R.D. 230 (N.D.N.Y. 1994) (imposing sanctions on attorney who based his RICO claim on predicate acts not listed in 18 U.S.C. § 1961(1)).

Here, Plaintiff lists twenty-four separate predicate acts in his First Amended Complaint— eight state law claims and sixteen federal claims. Fifteen of the twenty-four predicate acts alleged by Plaintiff are not listed in 18 U.S.C. § 1961(1) and thus cannot be used to establish a pattern of racketeering activity. *See Bonton*, 889 F. Supp. at 1002.[1]

Plaintiff has managed to list nine crimes—seven federal and two state—that do appear in 18 U.S.C. § 1961(1)'s definition of racketeering activity.[2] However, to successfully plead a RICO claim under § 1962(c), the plaintiff must do more than simply list the predicate act crimes necessary to establish a pattern of racketeering activity—the plaintiff must also plead specific facts that, if true, would establish that each predicate act was in fact committed by the defendants. *See Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989) ("'[r]acketeering activity' is

---

[1] The fifteen alleged predicate acts in Plaintiff's First Amended Complaint that are not listed in § 1961(1) are: Tex. Tax Code Ann. §§ 171.154, 171.202, and 171.204; Tex. Penal Code Ann. §§ 34.02, 35A.02, and 32.46; 18 U.S.C. § 1002; 18 U.S.C. § 1031; 18 U.S.C. § 1035; 18 U.S.C. § 1347; 18 U.S.C. § 225; 18 U.S.C. § 287; 26 U.S.C. § 1503; 26 U.S.C. § 6011; and 26 U.S.C. § 7434.

[2] The eight alleged predicate acts in Plaintiff's First Amended Complaint that are valid predicate acts listed in § 1961(1) are: Tex. Penal Code Ann. § 71.02; Tex. Penal Code Ann. § 20.03; 15 U.S.C. § 78(j); 18 U.S.C. 1341; 18 U.S.C. § 1343; 18 U.S.C. § 1952; 18 U.S.C. § 1956; 18 U.S.C. § 1957; and 18 U.S.C. § 2314.

defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead"). Plaintiff has failed to allege facts in his First Amended Complaint which, if true, would establish a violation of any of the nine valid § 1961(1) predicate acts that Plaintiff lists. For most of the nine predicate acts, Plaintiff simply identifies the statute, provides a general description of the conduct it prohibits, and then asserts that the Defendants have violated that statute. *See, e.g.*, Pl.'s Am. Compl. 23 ("The Defendants' scheme necessarily involved multiple violations of federal criminal prohibitions against the interstate transport of stolen goods in violation of 18 U.S.C. § 2314").

The only predicate act for which Plaintiff actually alleges specific facts is violation of Tex. Penal Code § 20.03, which criminalizes kidnapping—a state law crime that is considered a predicate act under section 1961(1). *See* 18 U.S.C. § 1961(1). However, the facts in Plaintiff's First Amended Complaint, if true, would not establish a violation of Tex. Penal Code § 20.03. Section 20.03 states that "[a] person commits [the offense of kidnapping] if he intentionally or knowingly abducts another person." Tex. Penal Code Ann. § 20.03(a). The Texas Court of Criminal Appeals has held that an abduction occurs under § 20.03 where a person is restrained by either "(1) secreting or holding him in a place where he is not likely to be found, or (2) using or threatening to use deadly force." *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). Here, Plaintiff fails to allege any facts in his First Amended Complaint which would, if true, establish that Plaintiff was restrained in a place where he was not likely to be found or was restrained through the use or threat of deadly force. Nowhere does Plaintiff allege that he was held in a place where he was not likely to be found—he was taken to a mental health facility by police officers pursuant to the temporary commitment provisions of the Texas Mental Health Code, and health officials, police officers, and Plaintiff's wife were all aware of Plaintiff's

location.  Plaintiff also does not allege that any police officer used or threatened to use deadly force on him.  Plaintiff has thus failed to plead facts which would establish a violation of the predicate act of kidnapping under Tex. Penal Code § 20.03(a).

Plaintiff's conclusory assertions that Defendants violated certain state and federal statutes are insufficient to plead the predicate acts necessary to establish a pattern of racketeering activity.  *See Elliott v. Foufas*, 867 F.2d 877, 879, 882 (5th Cir. 1989) (affirming district court's dismissal of plaintiff's RICO claims under Rule 12(b)(6) because plaintiff failed to plead facts which would establish that Defendants had violated the listed predicate acts).

Plaintiff has also failed to plead facts which, if true, would satisfy the third element of a § 1962(c) RICO claim—the existence of an association-in-fact or other enterprise to which the pattern of racketeering activities are connected.  *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993).  To prove the existence of an enterprise, a plaintiff must show either a legal entity or a union or group of individuals associated in fact.  *See Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 714 (N.D. Tex. 2011).  Here, the enterprise that Plaintiff attempts to allege consists of three separate legal entities—Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., and Abilene Psychiatric Center Associates, LLC—and several individuals who are either employees or corporate officers of one or more of the three legal entities—Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, and Tori Hicks.  Plaintiff alleges that this group of individuals and corporate entities formed an association-in-fact enterprise.

The Fifth Circuit has applied a three-part test to determine whether an alleged enterprise is indeed an association-in-fact for RICO purposes: (1) the enterprise must have an existence separate and apart from the pattern of racketeering, (2) the enterprise must have an ongoing

17

organization, and (3) the members of the enterprise must function as a continuing unit as shown by a hierarchical or consensual decision making structure. *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

At the motion to dismiss stage, to satisfy the first element of the association-in-fact test, a plaintiff "must plead specific facts that establish an association that exists other than merely to commit the predicate acts." *Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217-18 (5th Cir. 1989). Here, Plaintiff's First Amended Complaint asserts that the "enterprise was an association-in-fact of the conspiring Defendants." The complaint goes on to allege that the purpose of the enterprise was to detain Plaintiff and other similarly situated individuals in order to carry out insurance fraud. These conclusory assertions, even if true, would not establish that this collection of individuals and corporate entities had an existence separate and apart from the racketeering activity. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2010 WL 5105925, at *4 (N.D. Tex. Dec. 14, 2010) (finding that plaintiff had failed to plead facts showing that the enterprise was an entity separate and apart from the pattern of activity in which it engaged where plaintiff alleged that defendants had engaged in a pattern of racketeering activities and formed the enterprise with the purpose of selling life insurance policies). All Plaintiff has alleged is that there was an enterprise that engaged in the racketeering activities described in the First Amended Complaint—there are no facts suggesting that this enterprise existed separate and apart from those racketeering activities. *See Oblio Telecom, Inc. v. Patel*, CIV A 308-CV-0279-L, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) ("[plaintiff] must therefore plead specific facts that establish that the association exists for purposes other than simply to commit the predicate acts").

Plaintiff also fails to allege facts that, if true, would satisfy the second element of the association-in-fact test—that the enterprise was an ongoing organization. *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995). There are no facts describing the organization of the alleged enterprise or how the enterprise conducts its business of insurance fraud. *See Allstate Ins. Co. v. Donovan*, CIV.A. H-12-0432, 2012 WL 2577546, at *14 (S.D. Tex. July 3, 2012) (finding that plaintiff failed to plead facts sufficient to establish an ongoing organization where the complaint "lack[ed] factual allegations capable of establishing how the alleged [insurance fraud] scheme was formed, who—if anyone—was in charge, how each of the defendants participated in the alleged scheme . . . or whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud"). Furthermore, there are no facts that would show the enterprise is an ongoing organization that continues to detain other individuals besides Plaintiff for the purpose of effectuating insurance fraud. *See Goldin, Peiser & Peiser, L.L.P. v. Delta Brands, Inc.*, 3:02-CV-0127-M, 2002 WL 550450, at *3 (N.D. Tex. Apr. 11, 2002) (fact that association existed at one time is not sufficient—plaintiff must show that the organization continues to carry out the racketeering activities). Finally, Plaintiff fails to allege facts sufficient to satisfy the third element of the association-in-fact test—that the members of the enterprise functioned as a continuing unit as shown by a hierarchical or consensual decision making structure. Plaintiff has failed to plead any facts relating to the decision-making structure of the alleged enterprise.

In sum, Plaintiff's lengthy First Amended Complaint is devoid of factual allegations which would establish both the existence of an enterprise and the commission of two or more predicate acts. Plaintiff has failed to allege facts which would, if true, establish a violation of 18 U.S.C. § 1962(c).

## 2.   *Violation of 18 U.S.C. § 1962(d)*

Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c).   *See*

18 U.S.C. § 1962(d).   Because Plaintiff has failed to state a claim against Defendant Crowley

under section 1962(c), he has necessarily failed to state a claim for conspiracy to violate section

1962(c) under section 1962(d).   *See Escamilla v. City of Dall.*, CIV.A. 303CV0848K, 2004 WL

1932867, at *5 (N.D. Tex. Aug. 30, 2004).

Plaintiff has failed to plead facts which would, if true, prove a violation of either section

1962(c) or section 1962(d).   Thus, because Plaintiff has failed to plead a violation of one or more

of the four subsections of 18 U.S.C. § 1962, he has failed to state a civil RICO claim under 18

U.S.C. § 1964(c) upon which relief can be granted.   *See* 18 U.S.C. § 1964(c).   Accordingly, the

Court dismisses Plaintiff's civil RICO claim against Defendant John D. Crowley.

## C.   *FALSE IMPRISONMENT*

To prevail on a claim of false imprisonment, a plaintiff must show (1) willful detention

by the defendant; (2) without plaintiff's consent; and (3) without authority of law.   *See Wal-Mart*

*Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).   Here, Plaintiff has failed to include

any factual allegations in his First Amended Complaint which would suggest that Plaintiff's

detention was performed in the absence of the authority of law.   *See Wal-Mart Stores, Inc. v.*

*Resendez*, 962 S.W.2d 539, 540 (Tex. 1998).   On the contrary, Plaintiff was taken into custody—

first by the Abilene Police Department and then by Abilene Behavioral—under the authority of

the Texas Mental Health Code.   *See generally* Tex. Health & Safety Code Ann. §§ 571-579; *see*

*also* Tex. Health & Safety Code Ann. § 573.001 (permitting law enforcement officers to

temporarily detain mentally ill individuals without a warrant under certain circumstances); Tex.

Health & Safety Code Ann. § 573.021 (permitting a mental health facility to admit mentally ill

individuals for emergency detention pending preliminary examination where either an application for detention is filed or where a peace officer files a notification of detention); Tex. Health & Safety Code Ann. § 573.022 (permitting a mental health facility to admit and hold mentally ill individuals for emergency detention where a physician conducts a preliminary examination and makes a written statement regarding the nature of the mental illness and the justification for detention).

Because Plaintiff has failed to allege facts showing that Defendant John D. Crowley willfully detained Plaintiff without authority of law, Plaintiff has failed to state a claim for false imprisonment upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court dismisses Plaintiff's false imprisonment claim against Defendant John D. Crowley.

### D.  TEX. HEALTH & SAFETY CODE §§ 573.025 & 576.006

Plaintiff also attempts to plead causes of action under Tex. Health & Safety Code § 573.025, which outlines the rights of persons apprehended for emergency detention, and § 576.006, which outlines the rights of patients detained in a mental health facility. Defendant moves to dismiss this claim under Fed. R. Civ. P. 12(b)(6) arguing that he is immune from criminal and civil liability under Tex. Health & Safety Code § 571.019. Section 571.019(a) provides that "[a] person who participates in the examination . . . detention, [or] treatment . . . of any person . . . and who acts in good faith, reasonably, and without negligence is not criminally or civilly liable for that action." Tex. Health & Safety Code Ann. § 571.019(a). And subsection (b) provides that "[a] physician performing a medical examination and providing information to the court in a court proceeding held under [the Texas Mental Health Code] . . . is considered an officer of the court and is not liable for the examination or testimony when acting without malice." *Id.* § 571.019(b).

Dr. John D. Crowley's conduct fits squarely within both of these subsections. Dr. Crowley performed a psychiatric examination of Plaintiff as part of emergency detention proceedings under the Texas Mental Health Code. Dr. Crowley also submitted an affidavit to the Taylor County Court as part of Abilene Behavioral's commitment request under the Texas Mental Health Code. Furthermore, Plaintiff has failed to allege facts which would suggest that Defendant Crowley was acting unreasonably, in bad faith, negligently, or with malice. The most damning thing Plaintiff can allege about Dr. Crowley is that he relied on statements by Abilene Police Officer Pruitt that Plaintiff had made threats against Congressman Neugebauer when making his diagnosis, despite knowing that Plaintiff had never been charged with threatening anyone and despite Plaintiff's assertion that he had not made any such threats. This can hardly be said to rise to the level of negligence, much less actual malice, given that Dr. Crowley was informed that Plaintiff was suicidal, was taking antidepressant medication, and was very agitated when police arrived at his home. Accordingly, Tex. Health & Safety Code § 571.019 provides Defendant Crowley with immunity from liability under the Texas Mental Health Code.

However, even if Plaintiff has pled facts showing that Defendant was negligent and acted in bad faith—thus negating any immunity that Tex. Health & Safety Code § 571.019 might provide—the Court would still dismiss Plaintiff's statutory claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, because Tex. Health & Safety Code §§ 573.025 & 576.006 do not create private causes of action—they are criminal statutes and only the state of Texas may prosecute individuals for violation of the statutes. *See* Tex. Health & Safety Code Ann. § 571.021 ("[t]he state attorney general and the district and county attorneys within their respective jurisdictions shall prosecute violations of this subtitle [the Texas Mental Health Code]"); Tex. Health & Safety Code Ann. § 571.020(c) (listing punishments involving monetary fines and jail

time for violation of any provision of the Texas Mental Health Code).  This Court lacks

jurisdiction to prosecute such state law crimes.  Although 18 U.S.C. § 3231 gives "the district

courts of the United States" original jurisdiction over "all offenses against the laws of the United

States," it specifically notes that "[n]othing in this title shall be held to take away or impair the

jurisdiction of the courts of the several States under the laws thereof."  18 U.S.C. § 3231.  And in

Texas, the Texas state courts have exclusive jurisdiction over state criminal statutes.  *See* Tex.

Code Crim. Proc. Ann. art. 4.01.  Furthermore, the violation of a criminal statute does not give

rise to a private cause of action in favor of the victim of the crime.  *See Haffke v. U.S. Atty. Gen.*,

3-01-CV-2515-D, 2002 WL 122521, at \*2 (N.D. Tex. Jan. 11, 2002) (citing *Hanna v. Home Ins.*

*Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex.

App. 2001).

   Although the Texas Mental Health Code permits the assessment of civil penalties in

addition to criminal penalties, an action to recover civil penalties can only be brought by a

governmental entity—the mere existence of a civil penalties provision in the Texas Mental

Health Code does not create a private cause of action.  *See* Tex. Health & Safety Code Ann. §

571.023(b)-(d) (authorizing the Texas Department of State Health Services, the Texas Attorney

General, and any district or county attorney to institute a suit to recover civil penalties); *id.* §

571.023(f) (providing that any civil penalties collected shall be deposited in either the general

revenue fund of the state of Texas or the general fund of the county in which the suit was heard).

Accordingly, Plaintiff's claims under the Texas Mental Health Code are dismissed under Fed. R.

Civ. P. 12(b)(6) because of the immunity afforded Defendant under Tex. Health & Safety Code §

571.019, and, in the alternative, under Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.

### E. TEX. HEALTH & SAFETY CODE § 576.025

Plaintiff also attempts to plead a cause of action under Tex. Health & Safety Code § 576.025(b)(1)-(4), which outlines the procedures required to obtain consent from a patient for the administration of psychoactive medication. Plaintiff's claim is dismissed for the same reasons outlined in section (D), *supra*.

### F. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe." *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)). To satisfy the second element of an intentional infliction of emotional distress claim, the defendant's conduct must be so extreme in degree, or so outrageous in character, as to go beyond all bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community. *See Brown v. DaimlerChrysler Corp.*, CIV. A. 399CV1286D, 1999 WL 766021, at *2 (N.D. Tex. Sept. 24, 1999) (citing *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993)).

Plaintiff has included no facts in his First Amended Complaint which would suggest that Defendant John D. Crowley intentionally acted in a manner that was so extreme and outrageous as to go beyond all bounds of decency. Indeed, Plaintiff's only factual allegation against Defendant Crowley in his section titled "Defendants' Conduct was Extreme and Outrageous" is an assertion that Dr. Crowley "noted in his initial evaluation that Plaintiff denied ever making a threat to Defendant Robert Neugebauer, but also noted this fact was yet to be verified." This factual allegation fails to satisfy the requirements for pleading a claim of intentional infliction of

emotional distress. *See Hanners v. Davies*, 4:01-CV-0327-E, 2001 WL 803702, at *3 (N.D. Tex. July 12, 2001) (granting defendant's motion to dismiss plaintiff's intentional infliction of emotional distress claim where plaintiff failed to provide any evidence of defendant's extreme and outrageous conduct and instead made a general assertion that defendant inflicted mental distress). Plaintiff's intentional infliction of emotional distress claim against Defendant John D. Crowley is dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### G. OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court grants a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the defect by amending the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim"). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by Defendants in their respective motions to dismiss. Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action. Given the foregoing, those claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not

grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

**CONCLUSION**

The Motion to Dismiss filed by Defendant John D. Crowley is GRANTED.  Plaintiff's claims against the Defendant are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed this _3/5/_ day of October, 2014.

**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**