## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-cv-0093-J |
| | § | |
| ROBERT RANDOLPH NEUGEBAUER, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants:

Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene,

the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of

Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene

Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent

Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company,

Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The

complaint lists seventeen separate claims arising out of Plaintiff's temporary confinement in a

mental health facility. This opinion addresses the motion to dismiss filed by Joey A. Jacobs,

Christopher L. Howard, David M. Duckworth, and Brent Turner, all of whom are corporate

officers for Abilene Behavioral Health, LLC, the owner of the mental health facility where

Plaintiff was confined.

On July 9, 2014, Defendants Joey A. Jacobs, Christopher L. Howard, David M.

Duckworth, and Brent Turner filed a Motion to Dismiss for lack of subject matter jurisdiction

1

and failure to state a claim, seeking this Court's dismissal of Plaintiff's claims against them. Plaintiff filed responses to Defendants' motion on July 28, 2014 and filed amended responses on August 10, 2014. Before this Court could rule on Defendants' Motion to Dismiss, Plaintiff filed an amended complaint and then followed that filing with a Motion for Leave to File Amended Pleadings, which this Court granted on September 18, 2014. On September 30, 2014, the Defendants filed a second Motion to Dismiss, in response to Plaintiff's First Amended Complaint. Plaintiff filed a response on October 21, 2014. Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran. Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means." This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights. Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time. Plaintiff alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office. He assumed the laughter was directed at him. He again rang the bell. When the door was opened, he said, "you don't have to laugh at me." He then left the building. Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police. Although the exact conversation is not alleged, Plaintiff states that Detective

2

Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office." Nevertheless, Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene. No one answered the door. Plaintiff walked down the hall and began chatting with a receptionist in a nearby office. At some point, two Abilene police officers arrived. When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency. Plaintiff alleges that the officers started to handcuff him but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother." After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his well-being. We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife. Plaintiff asserted his willingness to give his life to save the lives of others. In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide. However, during Plaintiff's

preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman. After the interview, Officer Pruitt left Plaintiff's residence and returned with Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas. Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change. Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code. The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health. The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis." On the same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County. At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change. Plaintiff alleges that Depakote has certain possible side effects. At the conclusion of the hearing, in which it was

determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the Motion of Protective Order.  Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, and the corporate entities they control—Abilene Behavioral Health, LLC, and Acadia Healthcare Company, Inc.  First, Plaintiff alleges that Joey A. Jacobs is the President of Abilene Behavioral Health, LLC ("Abilene Behavioral") and the Chairman and Chief Executive of Acadia Healthcare Company, Inc. ("Acadia").  Second, Plaintiff alleges that Christopher L. Howard is the Vice President of Abilene Behavioral and Executive Vice President, General Counsel, and Secretary of Acadia. Third, Plaintiff alleges that David M. Duckworth is the Chief Financial Officer of Abilene Behavioral and the Chief Financial Officer of Acadia.  Fourth, Plaintiff alleges that Brent Turner is a Vice-President of Abilene Behavioral and the President of Acadia.

Plaintiff was transported to, and accepted by, Abilene Behavioral early in the morning of April 25, 2014.  On Monday, April 28, 2014, Abilene Behavioral submitted a commitment request to the County Attorney's Office.  Plaintiff was released from Abilene Behavioral on April 30, 2014 following a temporary commitment hearing.  Plaintiff alleges that these actions show that "Abilene Behavioral . . . Joey A. Jacobs; Christopher L. Howard; David M. Duckworth; Brent Turner; . . . [and] Acadia Healthcare . . . sought to restrain, and did restrain, Plaintiff's liberty as state actors in violation of the First, Fourth, and Fourteenth Amendments."

In three sections outlining his civil RICO claims against Defendants, Plaintiff makes numerous factual assertions applicable to all Defendants listed in the RICO count, including Joey

A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner. First, Plaintiff alleges that "[t]he conduct of the Defendants violates the provisions of 18 U.S.C. § 1962(c)." Second, Plaintiff alleges that the Defendants created an association-in-fact enterprise whose purpose was to deprive Plaintiff of his liberty in order to fraudulently obtain payment from insurance companies and the Medicare program. Plaintiff then lists twenty-four different federal and state crimes which he claims were committed by the Defendants and which he claims represent predicate acts that form a pattern of racketeering activity. Plaintiff also alleges that "Defendants conspired among themselves" to engage in the lengthy list of predicate act crimes and that Defendants "agreed to . . . withhold Plaintiff's liberty . . . for payment of funds from government entities and medical insurance programs." Plaintiff further states that each Defendant voluntarily and knowingly joined the conspiracy.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir.

2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

## DISCUSSION

In his First Amended Complaint, Plaintiff asserts six causes of action against Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner: (A) violation of 42 U.S.C. § 1983 based on alleged First, Fourth and Fourteenth Amendment violations, (B) a civil RICO claim under 18 U.S.C. § 1964(c) that Plaintiff lists in three separate counts, (C) false imprisonment, and (D) violation of Tex. Health & Safety Code § 576.025 (administration of psychoactive medication).

### A. 42 U.S.C. § 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). The requirement that the deprivation occur under color of

state law is also known as the "state action" requirement. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) ("a section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury. . . . In such cases, the 'under color of law' and state action inquiries merge into one"). A private party will be considered a state actor for § 1983 purposes only in rare circumstances. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Defendants seek to dismiss Plaintiff's § 1983 claims against them under Fed. R. Civ. P. 12(b)(6) because Plaintiff's First Amended Complaint fails to provide fair notice of state action attributable to Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner.

There are two ways that a private actor can be considered a state actor for purposes of imposing § 1983 liability. First, the plaintiff can show that the private entity was implementing an official government policy. *See Rundus v. City of Dall., Tex.*, 634 F.3d 309, 312 (5th Cir. 2011). Plaintiff has included no facts in his First Amended Complaint which, if true, would show that any of the governmental units sued by Plaintiff had an official policy that caused the alleged constitutional violations—much less that Defendants implemented that policy. Indeed, on the same day as this opinion was released, this Court also published orders dismissing § 1983 claims against the City of Abilene, the Abilene Police Department, the Betty Hardwick Center, Taylor County, Shackelford County, Callahan County, Jones County, and Stephens County, in part because Plaintiff failed to plead facts which would show the existence of an official government policy, custom, or practice that deprived Plaintiff of his constitutional rights.

The Court will thus focus its analysis on the second method for proving state action under § 1983—a showing that the private entity's actions are fairly attributable to the government. *See Rundus*, 634 F.3d at 312. This is also known as the "attribution test." The Supreme Court has

articulated a two-part inquiry for determining whether a private party's actions are fairly attributable to the government: (1) "the deprivation [of plaintiff's constitutional rights] must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Here, Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner are private citizens and corporate officers of Abilene Behavioral and Acadia, two private corporate entities. Thus Defendants can only be liable under § 1983 if their conduct that forms the basis of this lawsuit is fairly attributable to the state of Texas or one of its political subdivisions.

The Supreme Court utilizes three different tests for determining whether the conduct of a private actor can be fairly attributable to a state actor under the second prong of the attribution test: (1) the nexus or joint-action test, (2) the public function test, and (3) the state coercion or encouragement test. *See Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir.2003); *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (describing the three tests as applicable to the resolution of the second prong of the attribution test articulated by the Supreme Court in *Lugar*).

### 1. Nexus/joint-action test

Under the nexus test, a private party will be considered a state actor "where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise,'" and the actions of the private party can be treated as that of the state itself. *Bass*, 180 F.3d at 242; *see also Blum v. Yaretsky*, 457 U.S. 991,

1004 (1982).  The mere existence of state involuntary commitment statutes does not create a close nexus between the state and a private hospital such that the hospital can be classified as a state actor for § 1983 purposes.  *See Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992); *see also Goss v. Memorial Hosp. Sys.*, 789 F.2d 353, 356 (5th Cir. 1986) (holding that the mere existence of a state statute does not automatically result in state action).

Aside from the existence of state involuntary commitment statutes, Plaintiff has pled no facts which would suggest that any governmental entity has "insinuated itself into a position of interdependence" with Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, or Brent Turner.  Indeed, Plaintiff fails to plead any facts which would show that these Defendants ever interacted or communicated with the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, or the counties of Taylor, Callahan, Shackelford, Jones, and Stephens.  At most, Plaintiff has alleged that Abilene Police officers brought Plaintiff to Abilene Behavioral and left him there in the care of mental health professionals.  This brief interaction does not suggest any type of joint participation or interdependence between Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, or Brent Turner and the state actor defendants in this case. *See Lewis v. Law-Yone*, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (finding that plaintiff failed to plead facts showing the requisite insinuation necessary to satisfy the nexus test where the only pleaded relationship between the defendants and the state was the existence of a voluntary commitment statute).  Plaintiff has failed to plead facts that would satisfy the nexus test for state action under § 1983.

### 2.  *Public function test*

Under the public function test, a "private entity may be deemed a state actor when that entity performs a function which is traditionally the exclusive province of the state." *Bass v.*

*Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999). Several circuits, including the Fifth

Circuit have held that "the commitment and treatment of the mentally ill could not be deemed a

function traditionally within the exclusive province of the state." *Id.* at 243; *see also Harvey v.*

*Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992) ("[w]e are unwilling to categorize involuntary

commitment in Georgia as a function so reserved to the state that action under the commitment

statute transforms a private actor into a state actor"); *Spencer v. Lee*, 864 F.2d 1376, 1381 (7th

Cir. 1989).

Here, Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and

Brent Turner are private citizens and corporate officers of Abilene Behavioral Health, LLC.

After receiving Plaintiff as a patient, Abilene Behavioral initiated commitment proceedings in

the County Court of Taylor County. The mere fact that a private hospital or a private citizen is

regulated by involuntary commitment statutes and initiates civil commitment procedures against

another person does not transform that hospital or person into a state actor. *See Bass*, 180 F.3d at

242  (citing *Dahl v. Akin*, 630 F. 2d 277, 281 (5th Cir. 1980)).  Although it is true that Plaintiff

was brought to Abilene Behavioral after being interviewed by an Abilene Police officer and an

employee of the government-operated Betty Hardwick Center, that alone cannot transform the

actions of Defendants into a public function. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d

165, 168, 171 (3d Cir. 2004) (fact that police went to Plaintiff's home and took Plaintiff into

custody did not transform hospital's action of applying for emergency commitment into a public

function).  Ultimately it was a private hospital—Abilene Behavioral—that made the decision to

detain Plaintiff and apply for a temporary commitment request.  Plaintiff has failed to plead facts

showing that Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and

Brent Turner were performing a function that was traditionally the exclusive province of the state when they were acting as corporate officers of Abilene Behavioral.

### 3. State coercion or encouragement test

Under the state coercion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999). Again, several circuit courts have found that the use, by hospitals, of state involuntary commitment statutes to detain mentally ill individuals does not compel or encourage involuntary commitment. *See id.* at 243 (holding that state involuntary commitment statute does not compel or encourage involuntary commitment in a manner sufficient to establish state action under § 1983); *Harvey v. Harvey*, 949 F.2d 1127, 1130-31 (11th Cir. 1992) (same); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5-6 (1st Cir. 2005) (same); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (same).

However, some courts have found that state coercion or compulsion can be found where the plaintiff establishes that the private defendants were engaged in a conspiracy with state officials. *See Gallegos v. Slidell Police Dep't*, 07-6636, 2008 WL 1794170, at *4 (E.D. La. Apr. 18, 2008) (noting that the state compulsion test could be satisfied by showing that a private citizen conspired with state actors to violate plaintiff's constitutional rights); *see also Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (holding that a private actor could be held liable under § 1983 if plaintiff could establish that the private actor engaged in a conspiracy with state actors to involuntarily commit her in violation of her constitutional rights).

To establish such a conspiracy, the plaintiff must show that the private and public actors entered into an agreement to commit an illegal act. *See Tebo*, 550 F.3d at 496. At the motion to dismiss stage, the plaintiff must "allege specific facts to show an agreement." *See id.* (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004)). Here, Plaintiff has included no facts in his First Amended Complaint which would suggest that Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner entered into an agreement or were acting at the direction of any government official when Abilene Behavioral submitted a temporary commitment request to Taylor County. There are simply no facts which would, if true, show the existence of an illegal agreement between the Defendants and a governmental entity. Plaintiff has thus failed to plead facts showing that Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner were coerced or encouraged by any governmental entity to detain Plaintiff in a mental health facility. See *Gallegos v. Slidell Police Dep't*, 07-6636, 2008 WL 1794170, at *4 (E.D. La. Apr. 18, 2008) (holding that plaintiff failed to plead facts showing that the private defendants were engaged in a conspiracy with state officials because there were no allegations that defendants took action due to the direction of police officers).

In sum, Plaintiff's First Amended Complaint is devoid of the factual allegations necessary to plead state action under the nexus test, the public function test, or the state coercion or encouragement test. Plaintiff has failed to establish the necessary state action required to hold a private actor liable under § 1983. Accordingly, Plaintiff's § 1983 claims against Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner are dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## B.   18 U.S.C. § 1964(C) (CIVIL RICO)

The Racketeer Influenced and Corrupt Organizations Act (RICO) is a criminal statute targeted at the infiltration of organized crime into legitimate businesses. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The civil enforcement provisions of RICO are found at 18 U.S.C. § 1964(c). In order to be entitled to relief in a RICO civil action, a plaintiff must show a violation of one or more of the four subsections of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). Here, Plaintiff attempts to assert a civil RICO claim against Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner by pleading (1) violations of 18 U.S.C. § 1962(c) (participation in a criminal enterprise that conducts business through a pattern of racketeering activity) and (2) § 1962(d) (conspiring to violate subsections (a), (b), or (c) of § 1962). Defendants seek dismissal of Plaintiff's civil RICO claims under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to allege facts showing that there was an enterprise and has generally fail to plead any specific facts that would support his conclusory assertions that Defendants satisfied each of the elements of a civil RICO claim.

### 1.   Violation of 18 U.S.C. § 1962(c)

"Subsection 1962(c) prohibits persons employed by or associated with any enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996). To state a valid claim upon which relief can be granted under § 1962(c), a plaintiff must allege facts that show (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993); *Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2010 WL 5105925, at *3 (N.D. Tex. Dec. 14, 2010).

To establish the second element of a § 1962(c) claim—a pattern of racketeering activity—a plaintiff must allege facts that show (1) the violation of two or more "predicate acts" of racketeering activity enumerated in 18 U.S.C. § 1961(1), and (2) that the predicate acts form a pattern because they are related to each other and they have continuity. *See Burzynski*, 989, F.2d at 742; *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11-CV-0870-D, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012). For state law predicate acts "only crimes prohibited in state statutes *and* listed in section 1961(1) can serve as predicate offenses for the purpose of a RICO claim." *Pan Am. Mar., Inc. v. Esco Marine, Inc.*, C.A. B-04-188, 2005 WL 1155149, at *4 (S.D. Tex. May 10, 2005) (emphasis added). Such state law crimes include "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance." 18 U.S.C. § 1961(a); *Pan Am. Mar., Inc.*, 2005 WL 1155149, at *4.

For federal predicate acts, only those federal statutes specifically listed in section 1961(1) qualify as predicate acts for purpose of establishing a pattern of racketeering activity. *See Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1002 (S.D. Tex. 1995) ("[a]ny act that does not fall within the purview of RICO's definition of predicate offenses is not an act of 'racketeering activity'"); *Anael v. Interstate Brands Corp.*, 02 C 5192, 2003 WL 21995183, at *7 (N.D. Ill. Aug. 18, 2003) (holding that plaintiff failed to allege the predicate acts necessary to establish a pattern of racketeering activity where plaintiff alleged OSHA violations—which are not listed in 18 U.S.C. § 1961(1)); *Segarra v. Messina*, 153 F.R.D. 22, 30 on reconsideration, 158 F.R.D. 230 (N.D.N.Y. 1994) (imposing sanctions on attorney who based his RICO claim on predicate acts not listed in 18 U.S.C. § 1961(1)).

Here, Plaintiff lists twenty-four separate predicate acts in his First Amended Complaint— eight state law claims and sixteen federal claims. Fifteen of the twenty-four predicate acts

15

alleged by Plaintiff are not listed in 18 U.S.C. § 1961(1) and thus cannot be used to establish a pattern of racketeering activity. *See Bonton*, 889 F. Supp. at 1002.[1]

Plaintiff has managed to list nine crimes—seven federal and two state—that do appear in 18 U.S.C. § 1961(1)'s definition of racketeering activity.[2]  However, to successfully plead a RICO claim under § 1962(c), the plaintiff must do more than simply list the predicate act crimes necessary to establish a pattern of racketeering activity—the plaintiff must also plead specific facts that, if true, would establish that each predicate act was in fact committed by the defendants. *See Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) ("'[r]acketeering activity' is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead").  Plaintiff has failed to allege facts in his First Amended Complaint which, if true, would establish a violation of any of the nine valid § 1961(1) predicate acts that Plaintiff lists.  For most of the nine predicate acts, Plaintiff simply identifies the statute, provides a general description of the conduct it prohibits, and then asserts that the Defendants have violated that statute. *See, e.g.*, Pl.'s Am. Compl. 23 ("The Defendants' scheme necessarily involved multiple violations of federal criminal prohibitions against the interstate transport of stolen goods in violation of 18 U.S.C. § 2314").

The only predicate act for which Plaintiff actually alleges specific facts is violation of Tex. Penal Code § 20.03, which criminalizes kidnapping—a state law crime that is considered a predicate act under section 1961(1). *See* 18 U.S.C. § 1961(1).  However, the facts in Plaintiff's First Amended Complaint, if true, would not establish a violation of Tex. Penal Code § 20.03.

---

[1] The fifteen alleged predicate acts in Plaintiff's First Amended Complaint that are not listed in § 1961(1) are: Tex. Tax Code Ann. §§ 171.154, 171.202, and 171.204; Tex. Penal Code Ann. §§ 34.02, 35A.02, and 32.46; 18 U.S.C. § 1002; 18 U.S.C. § 1031; 18 U.S.C. § 1035; 18 U.S.C. § 1347; 18 U.S.C. § 225; 18 U.S.C. § 287; 26 U.S.C. § 1503; 26 U.S.C. § 6011; and 26 U.S.C. § 7434.

[2] The eight alleged predicate acts in Plaintiff's First Amended Complaint that are valid predicate acts listed in § 1961(1) are: Tex. Penal Code Ann. § 71.02; Tex. Penal Code Ann. § 20.03; 15 U.S.C. § 78(j); 18 U.S.C. 1341; 18 U.S.C. § 1343; 18 U.S.C. § 1952; 18 U.S.C. § 1956; 18 U.S.C. § 1957; and 18 U.S.C. § 2314.

Section 20.03 states that "[a] person commits [the offense of kidnapping] if he intentionally or knowingly abducts another person." Tex. Penal Code Ann. § 20.03(a). The Texas Court of Criminal Appeals has held that an abduction occurs under § 20.03 where a person is restrained by either "(1) secreting or holding him in a place where he is not likely to be found, or (2) using or threatening to use deadly force." *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). Here, Plaintiff fails to allege any facts in his First Amended Complaint which would, if true, establish that Plaintiff was restrained in a place where he was not likely to be found or was restrained through the use or threat of deadly force. Nowhere does Plaintiff allege that he was held in a place where he was not likely to be found—he was taken to a mental health facility by police officers pursuant to the temporary commitment provisions of the Texas Mental Health Code, and health officials, police officers, and Plaintiff's wife were all aware of Plaintiff's location. Plaintiff also does not allege that any police officer used or threatened to use deadly force on him. Plaintiff has thus failed to plead facts which would establish a violation of the predicate act of kidnapping under Tex. Penal Code § 20.03(a).

Plaintiff's conclusory assertions that Defendants violated certain state and federal statutes are insufficient to plead the predicate acts necessary to establish a pattern of racketeering activity. *See Elliott v. Foufas*, 867 F.2d 877, 879 (5th Cir. 1989) (affirming district court's dismissal of plaintiff's RICO claims under Rule 12(b)(6) because plaintiff failed to plead facts which would establish that Defendants had violated the listed predicate acts).

Plaintiff has also failed to plead facts which, if true, would satisfy the third element of a § 1962(c) RICO claim—the existence of an association-in-fact or other enterprise to which the pattern of racketeering activities are connected. *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993). To prove the existence of an enterprise, a plaintiff must show either a legal entity or

a union or group of individuals associated in fact. *See Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 714 (N.D. Tex. 2011). Here, the enterprise that Plaintiff attempts to allege consists of three separate legal entities—Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., and Abilene Psychiatric Center Associates, LLC—and several individuals who are either employees or corporate officers of one or more of the three legal entities—Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, and Tori Hicks. Plaintiff alleges that this group of individuals and corporate entities formed an association-in-fact enterprise.

The Fifth Circuit has applied a three-part test to determine whether an alleged enterprise is indeed an association-in-fact for RICO purposes: (1) the enterprise must have an existence separate and apart from the pattern of racketeering, (2) the enterprise must have an ongoing organization, and (3) the members of the enterprise must function as a continuing unit as shown by a hierarchical or consensual decision making structure. *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

At the motion to dismiss stage, to satisfy the first element of the association-in-fact test, a plaintiff "must plead specific facts that establish an association that exists other than merely to commit the predicate acts." *Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217-18 (5th Cir. 1989). Here, Plaintiff's First Amended Complaint asserts that the "enterprise was an association-in-fact of the conspiring Defendants." The complaint goes on to allege that the purpose of the enterprise was to detain Plaintiff and other similarly situated individuals in order to carry out insurance fraud. These conclusory assertions, even if true, would not establish that this collection of individuals and corporate entities had an existence separate and apart from the racketeering activity. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2010 WL

5105925, at *4 (N.D. Tex. Dec. 14, 2010) (finding that plaintiff had failed to plead facts showing that the enterprise was an entity separate and apart from the pattern of activity in which it engaged where plaintiff alleged that defendants had engaged in a pattern of racketeering activities and formed the enterprise with the purpose of selling life insurance policies). All Plaintiff has alleged is that there was an enterprise that engaged in the racketeering activities described in the First Amended Complaint—there are no facts suggesting that this enterprise existed separate and apart from those racketeering activities. *See Oblio Telecom, Inc. v. Patel*, CIV A 308-CV-0279-L, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) ("[plaintiff] must therefore plead specific facts that establish that the association exists for purposes other than simply to commit the predicate acts").

Plaintiff also fails to allege facts that, if true, would satisfy the second element of the association-in-fact test—that the enterprise was an ongoing organization. *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995). There are no facts describing the organization of the alleged enterprise or how the enterprise conducts its business of insurance fraud. *See Allstate Ins. Co. v. Donovan*, CIV.A. H-12-0432, 2012 WL 2577546, at *14 (S.D. Tex. July 3, 2012) (finding that plaintiff failed to plead facts sufficient to establish an ongoing organization where the complaint "lack[ed] factual allegations capable of establishing how the alleged [insurance fraud] scheme was formed, who—if anyone—was in charge, how each of the defendants participated in the alleged scheme . . . or whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud"). Furthermore, there are no facts that would show the enterprise is an ongoing organization that continues to detain other individuals besides Plaintiff for the purpose of effectuating insurance fraud. *See Goldin, Peiser & Peiser, L.L.P. v. Delta Brands, Inc.*, 3:02-CV-0127-M, 2002 WL 550450, at *3 (N.D. Tex. Apr. 11, 2002) (fact

19

that association existed at one time is not sufficient—plaintiff must show that the organization continues to carry out the racketeering activities).   Finally, Plaintiff fails to allege facts sufficient to satisfy the third element of the association-in-fact test—that the members of the enterprise functioned as a continuing unit as shown by a hierarchical or consensual decision making structure.   Plaintiff has failed to plead any facts relating to the decision-making structure of the alleged enterprise.

In sum, Plaintiff's lengthy First Amended Complaint is devoid of factual allegations which would establish both the existence of an enterprise and the commission of two or more predicate acts. Plaintiff has failed to allege facts which would, if true, establish a violation of 18 U.S.C. § 1962(c).

### 2.   Violation of 18 U.S.C. § 1962(d)

Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c).  *See* 18 U.S.C. § 1962(d).   Because Plaintiff has failed to state a claim against Defendant Crowley under section 1962(c), he has necessarily failed to state a claim for conspiracy to violate section 1962(c) under section 1962(d).  *See Escamilla v. City of Dall.*, CIV.A. 303CV0848K, 2004 WL 1932867, at *5 (N.D. Tex. Aug. 30, 2004).

Plaintiff has failed to plead facts which would, if true, prove a violation of either section 1962(c) or section 1962(d).   Thus, because Plaintiff has failed to plead a violation of one or more of the four subsections of 18 U.S.C. § 1962, he has failed to state a civil RICO claim under 18 U.S.C. § 1964(c) upon which relief can be granted. *See* 18 U.S.C. § 1964(c).   Accordingly, the Court dismisses Plaintiff's civil RICO claim against Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner.

## C.  FALSE IMPRISONMENT

To prevail on a claim of false imprisonment, a plaintiff must show (1) willful detention by the defendant; (2) without plaintiff's consent; and (3) without authority of law.  *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).  Here, Plaintiff has failed to include any factual allegations in his complaint which suggest that Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner willfully detained Plaintiff through violence or threats.  Indeed, Plaintiff never alleges that these four Defendants ever had any type of interaction with Plaintiff.  Even assuming that Defendants—who are corporate officers of Abilene Behavioral Health, LLC—could be held personally liable for Abilene Behavioral's actions in temporarily detaining Plaintiff, the First Amended Complaint fails to allege that the detention was performed in the absence of the authority of law.  *See Wal-Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998).  On the contrary, Plaintiff was taken into custody—first by the Abilene Police Department and then by Abilene Behavioral—under the authority of the Texas Mental Health Code.  *See generally* Tex. Health & Safety Code Ann. §§ 571-579; *see also* Tex. Health & Safety Code Ann. § 573.001 (permitting law enforcement officers to temporarily detain mentally ill individuals without a warrant under certain circumstances); Tex. Health & Safety Code Ann. § 573.021 (permitting a mental health facility to admit mentally ill individuals for emergency detention pending preliminary examination where either an application for detention is filed or where a peace officer files a notification of detention); Tex. Health & Safety Code Ann. § 573.022 (permitting a mental health facility to admit and hold mentally ill individuals for emergency detention where a physician conducts a preliminary examination and makes a written statement regarding the nature of the mental illness and the justification for detention).

Because Plaintiff has failed to allege facts showing that Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner willfully detained Plaintiff and because Plaintiff was taken into custody under the authority of the Texas Mental Health Code, Plaintiff has failed to state a claim for false imprisonment upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court dismisses Plaintiff's false imprisonment claims against Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner.

### D. TEX. HEALTH & SAFETY CODE § 576.025

Plaintiff also attempts to plead a cause of action under Tex. Health & Safety Code § 576.025(b)(1)-(4), which outlines the procedures required to obtain consent from a patient for the administration of psychoactive medication. Defendants move to dismiss this claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Tex. Health & Safety Code § 576.025 is a state criminal statute and that exclusive jurisdiction for prosecuting such actions lies with the Texas state courts.

Section 576.025 does not create a private cause of action—it is a criminal statute and only the state of Texas may prosecute individuals for violation of the statute. *See* Tex. Health & Safety Code Ann. § 571.021 ("[t]he state attorney general and the district and county attorneys within their respective jurisdictions shall prosecute violations of this subtitle [the Texas Mental Health Code]"); Tex. Health & Safety Code Ann. § 571.020(c) (listing punishments involving monetary fines and jail time for violation of any provision of the Texas Mental Health Code). This Court lacks jurisdiction to prosecute such state law crimes. Although 18 U.S.C. § 3231 gives "the district courts of the United States" original jurisdiction over "all offenses against the laws of the United States," it specifically notes that "[n]othing in this title shall be held to take

away or impair the jurisdiction of the courts of the several States under the laws thereof." 18 U.S.C. § 3231. And in Texas, the Texas state courts have exclusive jurisdiction over state criminal statutes. *See* Tex. Code Crim. Proc. Ann. art. 4.01. Furthermore, the violation of a criminal statute does not give rise to a private cause of action in favor of the victim of the crime. *See Haffke v. U.S. Atty. Gen.*, 3-01-CV-2515-D, 2002 WL 122521, at *2 (N.D. Tex. Jan. 11, 2002) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App. 2001).

Although the Texas Mental Health Code permits the assessment of civil penalties in addition to criminal penalties, an action to recover civil penalties can only be brought by a governmental entity—the mere existence of a civil penalties provision in the Texas Mental Health Code does not create a private cause of action. *See* Tex. Health & Safety Code Ann. § 571.023(b)-(d) (authorizing the Texas Department of State Health Services, the Texas Attorney General, and any district or county attorney to institute a suit to recover civil penalties); *id.* § 571.023(f) (providing that any civil penalties collected shall be deposited in either the general revenue fund of the state of Texas or the general fund of the county in which the suit was heard). Accordingly, Plaintiff's claims under the Texas Mental Health Code are dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## E. OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court grants a defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the defect by amending the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as

this, when the trial court has dismissed the complaint for failure to state a claim"). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by Defendants in their respective motions to dismiss. Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action. Given the foregoing, those claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

## CONCLUSION

The Motion to Dismiss filed by Defendants Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, and Brent Turner is GRANTED. Plaintiff's claims against the Defendants are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed this __3/5t__ day of October, 2014.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE

24