## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| LARRY RUSSELL GORDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-cv-0093-J |
| | § | |
| ROBERT RANDOLPH NEUGEBAUER, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

On June 9, 2014, Plaintiff filed a complaint in this Court against twenty-two defendants: Congressman Robert Randolph Neugebauer, the Abilene Police Department, the City of Abilene, the Betty Hardwick Center, the County of Taylor, the County of Jones, the County of Shackelford, the County of Stephens, the County of Callahan, Stan Standridge, Abilene Behavioral Health, LLC, Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, Acadia Healthcare Company, Inc., Abilene Psychiatric Center Associates, LLC, Tori Hicks, and Williams Zimmerman. The complaint lists seventeen separate claims arising out of Plaintiff's temporary confinement in a mental health facility. This opinion addresses Plaintiff's claims against Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Daniel Ryan Freshour, Tori Hicks, and Duane C. Miller.

Plaintiff later filed a First Amended Complaint and then followed that filing with a Motion for Leave to File Amended Pleadings, which this Court granted on September 18, 2014. In response, Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc.,

1

Daniel Ryan Freshour, Tori Hicks, and Duane C. Miller filed an answer to Plaintiff's First Amended Complaint on September 30, 2014. In that answer, Defendants asserted several affirmative defenses, including (1) Plaintiff's failure to state a claim upon which relief can be granted, and (2) an assertion that Defendants are not state actors and thus cannot be held liable under 42 U.S.C. § 1983.

On October 21, 2014, Plaintiff filed a Motion to Strike, requesting that this Court strike the affirmative defenses raised in Defendants' answer to Plaintiff's First Amended Complaint. Defendants filed a response on November 12, 2014.

For purposes of this opinion and order, the Court will construe the affirmative defenses in Defendants' answer to Plaintiff's First Amended Complaint as a motion to dismiss. *See United States v. Benavides*, No. CIV.A. B-07-108, 2008 WL 362682, at *4 (S.D. Tex. Feb. 8, 2008) (construing affirmative defenses in defendant's answer as a motion to dismiss). Plaintiff's Motion to Strike is DENIED. Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

Plaintiff Larry Russell Gordon is a sixty-nine-year-old Abilene resident and Vietnam War veteran. Plaintiff states that although he has a warm home and a spouse of many years, "his mission is to care for homeless and discarded veterans in whatever way may be available to his means." This often extends to his spending nights away from home with veterans, "giving them company and emotional support as they seek . . . refuge by sleeping under bridges or whatever shelter they may find in Taylor County, Texas."

On September 24, 2012, Plaintiff visited the Abilene offices of Congressman Robert Randolph Neugebauer while carrying exercise weights. Plaintiff asked to meet with the Congressman but was told that the Congressman was very busy and did not have time. Plaintiff

alleges that after he left the office, "and as he paused to adjust the exercise weights he was carrying," he heard laughter coming from the office. He assumed the laughter was directed at him. He again rang the bell. When the door was opened, he said, "you don't have to laugh at me." He then left the building. Following this incident, Plaintiff states that he received a telephone call from Detective William Zimmerman, a member of the United States Capitol Police. Although the exact conversation is not alleged, Plaintiff states that Detective Zimmerman threatened him "with reprisals meant to be believed by Plaintiff to mean imminent bodily injury if he were to ever again visit Defendant Neugebauer's office." Nevertheless, Plaintiff continued to repeatedly visit Congressman Neugebauer's office for almost two years and attempted to meet him in person to no avail.

On April 24, 2014, Plaintiff once again visited the Congressman's office in Abilene. No one answered the door. Plaintiff walked down the hall and began chatting with a receptionist in a nearby office. At some point, two Abilene police officers arrived. When they went toward the elevator, Plaintiff stopped them to inquire about the seeming emergency. Plaintiff alleges that the officers started to handcuff him, but released him and stated that he was banned from the building where the Congressman's offices were located.

After leaving the building, the Plaintiff gave a television interview with a KATB news reporter in which he stated that he had wanted to discuss veterans' issues with the Congressman and intended to tell the Congressman, "[s]ince I talked to you last, 66 people have taken their lives . . . My brothers are . . . once they're your brother, they're always your brother." After the newscast, the Congressman released the following statement: "For the past few weeks, my staff has been working with a constituent whose behavior has given us reason to be concerned for his

well-being.  We referred the matter to the Capitol Police and Abilene Police Department so they could provide the assistance required to ensure his health and safety."

That evening, Officer Pruitt of the Abilene Police Department visited Plaintiff's residence and interviewed Plaintiff and his wife.  Plaintiff asserted his willingness to give his life to save the lives of others.  In his report, Officer Pruitt stated that Plaintiff had made threats toward Congressman Neugebauer, was taking Paxil for depression, had articulated suicidal thoughts, and seemed grandiose and obsessed with the issue of veteran suicide.  However, during Plaintiff's preliminary examination on April 25, 2014, Plaintiff stated that he had made no threats toward the Congressman.  After the interview, Officer Pruitt left Plaintiff's residence and returned with Judy McDowell, the Medical Crisis Outreach Team Coordinator at the Betty Hardwick Center, a unit of local government that provides mental health services to several counties in Texas. Plaintiff was then driven to Abilene Behavioral Health—a private mental health facility—where he was admitted as a patient at 2:40 AM on Friday, April 25, 2014.

Plaintiff alleges that on Monday, April 28, 2014, he was informed by Daniel Ryan Freshour, P.A., that his medication needed to be changed and that his signature was required to consent to the change.  Plaintiff alleges that he asked to speak to his attorney first, but after pressure from Mr. Freshour, Plaintiff provided his signature and consented to the medication change.

On Monday, April 28, 2014, Abilene Behavioral Health submitted a commitment request to the Taylor County Attorney's Office pursuant to the Texas Mental Health Code.  The request was signed by Dr. Duane Miller, the Attending Physician and Medical Director of Abilene Behavioral Health.  The request contained an affidavit sworn by Dr. John Crowley, with Plaintiff's diagnosis listed as "Major Depressive Order, recurrent with severe psychosis."  On the

same day, Dr. Crowley submitted an Application for Court-Ordered Temporary Mental Health Services, requesting that Plaintiff be held for treatment for a period not to exceed ninety days.

A Temporary Commitment Hearing was held on April 30, 2014 at Abilene Behavioral Health via videoconference with the County Court of Taylor County.  At the hearing, Mr. Freshour stated that he had changed Plaintiff's medication from Paxil to Depakote and that Abilene Behavioral thus wished to monitor the results of the medication change.  Plaintiff alleges that Depakote has certain possible side effects.  At the conclusion of the hearing, in which it was determined that the effects of the medication change could be monitored by Plaintiff's private physician, Taylor County Assistant District Attorney Etta Warman decided to withdraw the Motion of Protective Order.  Plaintiff was released from the Abilene Behavioral Health facility on the same day.

In his complaint, Plaintiff makes the following factual allegations specific to Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Daniel Ryan Freshour, Tori Hicks, and Duane C. Miller.  First, Plaintiff alleges that Abilene Behavioral Health, LLC is an entity that is 100% owned by Acadia Healthcare Company, Inc.  Second, Plaintiff alleges that Abilene Behavioral Health, LLC accepted Plaintiff as a patient during the early morning hours of April 25, 2014.  Third, Plaintiff alleges that Daniel Ryan Freshour, a healthcare professional employed by Abilene Behavioral Health, LLC, obtained Plaintiff's signature and consent to a medication change through coercion, despite the fact that Plaintiff informed Mr. Freshour that he would prefer to speak to his attorney first.  Plaintiff states that this decision to change Plaintiff's medication to Depakote "did rise to extreme and outrageous conduct."

Fourth, Plaintiff alleges that Abilene Behavioral Health, LLC submitted a temporary commitment request to the Taylor County Attorney's Office in the name of Dr. Duane C. Miller,

the Attending Physician and Medical Director of Abilene Behavioral Health, LLC. As part of this request, Abilene Behavioral Health, LLC included sworn attestations detailing Plaintiff's diagnosis. Fifth, Plaintiff alleges that Abilene Behavioral Health, LLC employee Dr. John D. Crowley submitted an application to Taylor County for Court Ordered Temporary Mental Health Services. Sixth, Plaintiff alleges that a temporary commitment hearing was held on April 30, 2014 inside a room at the Abilene Behavioral facility via videoconference with the County Court of Taylor County. Daniel Ryan Freshour was the State's sole witness at this hearing. Plaintiff alleges that during the hearing, Mr. Freshour stated that he had no knowledge of any suicide attempt by Plaintiff and admitted that there was no evidence that Plaintiff had made threats against Congressman Neugebauer. Plaintiff was released from the custody of Abilene Behavioral on the same day. Seventh, Plaintiff alleges that on May 29, 2014, he participated in a therapy session with Tori Hicks, an employee of Abilene Psychiatric Center Associates, LLC. During this session, Ms. Hicks informed Plaintiff that he should forget the hospitalization incident and that it was "impossible to change things."

Plaintiff also alleges that Defendants Abilene Behavioral Health, LLC . . . Daniel Ryan Freshour; Duane C. Miller . . . Tori Hicks; [and] Acadia Healthcare Company, Inc. . . . sought to restrain, and did restrain, Plaintiff's liberty as state actors in violation of the First, Fourth, and Fourteenth Amendments of the United States Constitution." Plaintiff alleges that Defendant Tori Hicks denied Plaintiff his right to privacy when she treated him despite his instruction that he not be treated by any individual affiliated with Abilene Behavioral Health, LLC. Finally, Plaintiff alleges that Abilene Behavioral Health, LLC and Acadia Healthcare Company, Inc. disseminated statements through television advertising, the internet, and to state and federal officials, which

materially misrepresented the character of the services they provided and which caused confusion or misunderstanding as to the source, sponsorship, and approval of those services.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff "and assume the truth of all pleaded facts." *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

In his First Amended Complaint, Plaintiff asserts the following causes of action against Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Daniel Ryan Freshour, Tori Hicks, and Duane C. Miller: (A) violation of 42 U.S.C. § 1983 based on alleged

First, Fourth and Fourteenth Amendment violations, (B) a civil RICO claim under 18 U.S.C. § 1964(c) that Plaintiff lists in three separate counts, and (C) numerous state law claims, including false imprisonment, intentional infliction of emotional distress (as to all Defendants except Acadia Healthcare Company, Inc.), violation of Tex. Bus. & Com. Code § 17.12 (as to Defendants Abilene Behavioral Health, LLC and Acadia Healthcare Company, Inc.), violation of Tex. Bus. & Com. Code § 17.46(b)(2) & (3) (as to Defendants Abilene Behavioral Health, LLC and Acadia Healthcare Company, Inc.), violation of Tex. Health & Safety Code § 573.025 & 576.006 (as to Defendants Abilene Behavioral Health, LLC, Duane C. Miller, and Daniel Ryan Freshour), and violation of Tex. Health & Safety Code § 576.025.

### A.   42 U.S.C. § 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). The requirement that the deprivation occur under color of state law is also known as the "state action" requirement. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) ("a section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury. . . . In such cases, the 'under color of law' and state action inquiries merge into one"). A private party will be considered a state actor for § 1983 purposes only in rare circumstances. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

There are two ways that a private actor can be considered a state actor for purposes of imposing § 1983 liability.  First, the plaintiff can show that the private actor was implementing an official government policy.  *See Rundus v. City of Dall., Tex.*, 634 F.3d 309, 312 (5th Cir. 2011).  Plaintiff has included no facts in his First Amended Complaint which, if true, would show that any of the governmental units sued by Plaintiff had an official policy that caused the alleged constitutional violations—much less that Defendants implemented that policy.  Indeed, on October 31, 2014, this Court published orders dismissing § 1983 claims against the City of Abilene, the Abilene Police Department, the Betty Hardwick Center, Taylor County, Shackelford County, Callahan County, Jones County, and Stephens County, in part because Plaintiff failed to plead facts which would show the existence of an official government policy, custom, or practice that deprived Plaintiff of his constitutional rights.

The Court will thus focus its analysis on the second method for proving state action under § 1983—a showing that the private entity's actions are fairly attributable to the government.  *See Rundus*, 634 F.3d at 312.  This is also known as the "attribution test."  The Supreme Court has articulated a two-part inquiry for determining whether a private party's actions are fairly attributable to the government: (1) "the deprivation [of plaintiff's constitutional rights] must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).  Here, Defendant Abilene Behavioral Health, LLC is a private Limited Liability Company registered in Texas.  Defendant Acadia Healthcare Company, Inc. is a Delaware corporation.  Defendants Daniel Ryan Freshour, Duane C. Miller, and Tori Hicks are

private individuals and healthcare professionals employed by Abilene Behavioral Health and its affiliates. Thus, Defendants can only be liable under § 1983 if their conduct that forms the basis of this lawsuit is fairly attributable to the state of Texas or one of its political subdivisions.

The Supreme Court utilizes three different tests for determining whether the conduct of a private actor can be fairly attributable to a state actor under the second prong of the attribution test: (1) the nexus or joint-action test, (2) the public function test, and (3) the state coercion or encouragement test. *See Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003); *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993) (describing the three tests as applicable to the resolution of the second prong of the attribution test articulated by the Supreme Court in *Lugar*).

### 1. Nexus/joint-action test

Under the nexus test, a private party will be considered a state actor "where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise,'" and the actions of the private party can be treated as that of the state itself. *Bass*, 180 F.3d at 242; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The mere existence of state involuntary commitment statutes does not create a close nexus between the state and a private hospital such that the hospital—or its employees— can be classified as state actors for § 1983 purposes. *See Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992); *see also Goss v. Memorial Hosp. Sys.*, 789 F.2d 353, 356 (5th Cir. 1986) (holding that the mere existence of a state statute does not automatically result in state action).

Aside from the existence of state involuntary commitment statutes, Plaintiff has pled no facts which would suggest that any state governmental entity has "insinuated itself into a position of interdependence" with Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc.,

Duane C. Miller, Daniel Ryan Freshour, or Tori Hicks.  Indeed, Plaintiff fails to plead any facts

which would show that these Defendants ever interacted or communicated with the Abilene

Police Department, the City of Abilene, the Betty Hardwick Center, or the counties of Taylor,

Callahan, Shackelford, Jones, and Stephens—aside from (1) Abilene police officers transporting

Plaintiff to Abilene Behavioral and (2) Abilene Behavioral's submission of a temporary

commitment request to the Taylor County Attorney's Office and the subsequent hearing that was

held pursuant to the Texas Mental Health Code to address the merits of that request.  The facts

alleged do not suggest any type of joint participation or interdependence between Abilene

Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan

Freshour, or Tori Hicks, and the state actor defendants in this case.  *See Lewis v. Law-Yone*, 813

F. Supp. 1247, 1254 (N.D. Tex. 1993) (finding that plaintiff failed to plead facts showing the

requisite insinuation necessary to satisfy the nexus test where the only pleaded relationship

between the defendants and the state was the existence of a voluntary commitment statute).

Plaintiff has failed to plead facts that would satisfy the nexus test for state action under § 1983.

### 2.  *Public function test*

Under the public function test, a "private entity may be deemed a state actor when that

entity performs a function which is traditionally the exclusive province of the state." *Bass v.*

*Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999).  Several circuits, including the Fifth

Circuit have held that "the commitment and treatment of the mentally ill could not be deemed a

function traditionally within the exclusive province of the state." *Id.* at 243; *see also Harvey v.*

*Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992) ("[w]e are unwilling to categorize involuntary

commitment in Georgia as a function so reserved to the state that action under the commitment

statute transforms a private actor into a state actor"); *Spencer v. Lee*, 864 F.2d 1376, 1381 (7th Cir. 1989).

Here, Defendants are all either private individuals or private corporate entities. Plaintiff has alleged no facts in his complaint which would suggest that Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan Freshour, or Tori Hicks were performing any public functions that have traditionally been reserved to the states. Although Abilene Behavioral initiated commitment proceedings against Plaintiff in the County Court of Taylor County, the mere fact that a private hospital or a private citizen is regulated by involuntary commitment statutes and initiates civil commitment proceedings against another person does not transform that hospital or person into a state actor. *See Bass*, 180 F.3d at 242 (citing *Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir. 1980)). Although it is true that Plaintiff was brought to Abilene Behavioral after being interviewed by an Abilene Police officer and an employee of the government-operated Betty Hardwick Center, that alone cannot transform the actions of Defendants into public functions. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 168, 171 (3d Cir. 2004) (fact that police went to Plaintiff's home and took Plaintiff into custody did not transform hospital's action of applying for emergency commitment into a public function). Ultimately it was a private hospital—Abilene Behavioral—that made the independent decision to detain Plaintiff and apply for a temporary commitment request. Plaintiff has failed to plead facts showing that Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan Freshour, or Tori Hicks were performing a function that was traditionally the exclusive province of the state when they treated Plaintiff and initiated temporary civil commitment proceedings against him.

### 3.   State coercion or encouragement test

Under the state coercion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999). Again, several circuit courts have found that the use, by hospitals, of state involuntary commitment statutes to detain mentally ill individuals does not compel or encourage involuntary commitment. *See id.* at 243 (holding that state involuntary commitment statute does not compel or encourage involuntary commitment in a manner sufficient to establish state action under § 1983); *Harvey v. Harvey*, 949 F.2d 1127, 1130-31 (11th Cir. 1992) (same); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5-6 (1st Cir. 2005) (same); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171 (3d Cir. 2004) (same).

However, some courts have found that state coercion or compulsion can be found where the plaintiff establishes that the private defendants were engaged in a conspiracy with state officials. *See Gallegos v. Slidell Police Dep't*, 07-6636, 2008 WL 1794170, at *4 (E.D. La. Apr. 18, 2008) (noting that the state compulsion test could be satisfied by showing that a private citizen conspired with state actors to violate plaintiff's constitutional rights); *see also Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (holding that a private actor could be held liable under § 1983 if plaintiff could establish that the private actor engaged in a conspiracy with state actors to involuntarily commit her in violation of her constitutional rights).

To establish such a conspiracy, the plaintiff must show that the private and public actors entered into an agreement to commit an illegal act. *See Tebo*, 550 F.3d at 496. At the motion to dismiss stage, the plaintiff must "allege specific facts to show an agreement." *See id.* (quoting

*Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004)).   Here, Plaintiff has included no

facts in his First Amended Complaint which would suggest that Defendants Abilene Behavioral

Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan Freshour, or Tori

Hicks entered into an agreement or were acting at the direction of any government official when

Abilene Behavioral submitted a temporary commitment request to Taylor County.   There are

simply no facts which would, if true, show the existence of an illegal agreement between the

Defendants and a governmental entity.   Plaintiff has failed to plead facts showing that

Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C.

Miller, Daniel Ryan Freshour, or Tori Hicks were coerced by any governmental entity to detain

Plaintiff in a mental health facility.   *See Gallegos v. Slidell Police Dep't*, 07-6636, 2008 WL

1794170, at \*4 (E.D. La. Apr. 18, 2008) (holding that plaintiff failed to plead facts showing that

the private defendants were engaged in a conspiracy with state officials because there were no

allegations that defendants took action due to the direction of police officers).

In sum, Plaintiff's First Amended Complaint is devoid of the factual allegations

necessary to plead state action under the nexus test, the public function test, or the state coercion

or encouragement test.   Plaintiff has failed to establish the necessary state action required to hold

a private actor liable under § 1983.   Accordingly, Plaintiff's § 1983 claims against Defendants

Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel

Ryan Freshour, and Tori Hicks are dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted.

### B.   18 U.S.C. § 1964(C) (CIVIL RICO)

The Racketeer Influenced and Corrupt Organizations Act (RICO) is a criminal statute

targeted at the infiltration of organized crime into legitimate businesses.   *See Reves v. Ernst &*

*Young*, 507 U.S. 170, 185 (1993).   The civil enforcement provisions of RICO are found at 18 U.S.C. § 1964(c).  In order to be entitled to relief in a RICO civil action, a plaintiff must show a violation of one or more of the four subsections of 18 U.S.C. § 1962.  *See* 18 U.S.C. § 1964(c). Here, Plaintiff attempts to assert a civil RICO claim against Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan Freshour, and Tori Hicks by pleading (1) violations of 18 U.S.C. § 1962(c) (participation in a criminal enterprise that conducts business through a pattern of racketeering activity) and (2) violations of § 1962(d) (conspiring to violate subsections (a), (b), or (c) of § 1962).

### 1.   *Violation of 18 U.S.C. § 1962(c)*

"Subsection 1962(c) prohibits persons employed by or associated with any enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996). To state a valid claim upon which relief can be granted under § 1962(c), a plaintiff must allege facts that show (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.  *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993); *Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2010 WL 5105925, at *3 (N.D. Tex. Dec. 14, 2010).

To establish the second element of a § 1962(c) claim—a pattern of racketeering activity—a plaintiff must allege facts that show (1) the violation of two or more "predicate acts" of racketeering activity enumerated in 18 U.S.C. § 1961(1), and (2) that the predicate acts form a pattern because they are related to each other and they have continuity.  *See Burzynski*, 989 F.2d at 742; *Orthoflex, Inc. v. ThermoTek, Inc.*, 3:11-CV-0870-D, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012).  For state law predicate acts "only crimes prohibited in state statutes *and*

15

listed in section 1961(1) can serve as predicate offenses for the purpose of a RICO claim." *Pan Am. Mar., Inc. v. Esco Marine, Inc.*, C.A. B-04-188, 2005 WL 1155149, at *4 (S.D. Tex. May 10, 2005) (emphasis added). Such state law crimes include "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance." 18 U.S.C. § 1961(a); *Pan Am. Mar., Inc.*, 2005 WL 1155149, at *4.

For federal predicate acts, only those federal statutes specifically listed in section 1961(1) qualify as predicate acts for purposes of establishing a pattern of racketeering activity. *See Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1002 (S.D. Tex. 1995) ("[a]ny act that does not fall within the purview of RICO's definition of predicate offenses is not an act of 'racketeering activity'"); *Anael v. Interstate Brands Corp.*, 02 C 5192, 2003 WL 21995183, at *7 (N.D. Ill. Aug. 18, 2003) (holding that plaintiff failed to allege the predicate acts necessary to establish a pattern of racketeering activity where plaintiff alleged OSHA violations—which are not listed in 18 U.S.C. § 1961(1)); *Segarra v. Messina*, 153 F.R.D. 22, 30 on reconsideration, 158 F.R.D. 230 (N.D.N.Y. 1994) (imposing sanctions on attorney who based his RICO claim on predicate acts not listed in 18 U.S.C. § 1961(1)).

Here, Plaintiff lists twenty-four separate predicate acts in his First Amended Complaint— eight state law claims and sixteen federal claims. Fifteen of the twenty-four predicate acts alleged by Plaintiff are not listed in 18 U.S.C. § 1961(1) and thus cannot be used to establish a pattern of racketeering activity. *See Bonton*, 889 F. Supp. at 1002.[1]

---

[1] The fifteen alleged predicate acts in Plaintiff's First Amended Complaint that are not listed in § 1961(1) are: Tex. Tax Code Ann. §§ 171.154, 171.202, and 171.204; Tex. Penal Code Ann. §§ 34.02, 35A.02, and 32.46; 18 U.S.C. § 1002; 18 U.S.C. § 1031; 18 U.S.C. § 1035; 18 U.S.C. § 1347; 18 U.S.C. § 225; 18 U.S.C. § 287; 26 U.S.C. § 1503; 26 U.S.C. § 6011; and 26 U.S.C. § 7434.

Plaintiff has managed to list nine crimes—seven federal and two state—that do appear in 18 U.S.C. § 1961(1)'s definition of racketeering activity.[2]   However, to successfully plead a RICO claim under § 1962(c), the plaintiff must do more than simply list the predicate act crimes necessary to establish a pattern of racketeering activity—the plaintiff must also plead specific facts that, if true, would establish that each predicate act was in fact committed by the defendants. *See Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989) ("'[r]acketeering activity' is defined by reference to various state and federal offenses, each of which subsumes additional constituent elements which the plaintiff must plead").   Plaintiff has failed to allege facts in his First Amended Complaint which, if true, would establish a violation of any of the nine valid § 1961(1) predicate acts that Plaintiff lists.   For most of the nine predicate acts, Plaintiff simply identifies the statute, provides a general description of the conduct it prohibits, and then asserts that the Defendants have violated that statute. *See, e.g.,* Pl.'s Am. Compl. 23 ("The Defendants' scheme necessarily involved multiple violations of federal criminal prohibitions against the interstate transport of stolen goods in violation of 18 U.S.C. § 2314").

The only predicate act for which Plaintiff actually alleges specific facts is violation of Tex. Penal Code § 20.03, which criminalizes kidnapping—a state law crime that is considered a predicate act under section 1961(1). *See* 18 U.S.C. § 1961(1).   However, the facts in Plaintiff's First Amended Complaint, if true, would not establish a violation of Tex. Penal Code § 20.03. Section 20.03 states that "[a] person commits [the offense of kidnapping] if he intentionally or knowingly abducts another person."   Tex. Penal Code Ann. § 20.03(a).   The Texas Court of Criminal Appeals has held that an abduction occurs under § 20.03 where a person is restrained by either "(1) secreting or holding him in a place where he is not likely to be found, or (2) using

---

[2] The eight alleged predicate acts in Plaintiff's First Amended Complaint that are valid predicate acts listed in § 1961(1) are: Tex. Penal Code Ann. § 71.02; Tex. Penal Code Ann. § 20.03; 15 U.S.C. § 78(j); 18 U.S.C. § 1341; 18 U.S.C. § 1343; 18 U.S.C. § 1952; 18 U.S.C. § 1956; 18 U.S.C. § 1957; and 18 U.S.C. § 2314.

or threatening to use deadly force." *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). Here, Plaintiff fails to allege any facts in his First Amended Complaint which would, if true, establish that Plaintiff was restrained in a place where he was not likely to be found or was restrained through the use or threat of deadly force. Nowhere does Plaintiff allege that he was held in a place where he was not likely to be found—he was taken to a mental health facility by police officers pursuant to the temporary commitment provisions of the Texas Mental Health Code, and health officials, police officers, and Plaintiff's wife were all aware of Plaintiff's location. Plaintiff also does not allege that any police officer used or threatened to use deadly force on him. Plaintiff has thus failed to plead facts which would establish a violation of the predicate act of kidnapping under Tex. Penal Code § 20.03(a).

Plaintiff's conclusory assertions that Defendants violated certain state and federal statutes are insufficient to plead the predicate acts necessary to establish a pattern of racketeering activity. *See Elliott v. Foufas*, 867 F.2d 877, 879, 882 (5th Cir. 1989) (affirming district court's dismissal of plaintiff's RICO claims under Rule 12(b)(6) because plaintiff failed to plead facts which would establish that defendants had violated the listed predicate acts).

Plaintiff has also failed to plead facts which, if true, would satisfy the third element of a § 1962(c) RICO claim—the existence of an association-in-fact or other enterprise to which the pattern of racketeering activities are connected. *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993). To prove the existence of an enterprise, a plaintiff must show either a legal entity or a union or group of individuals associated in fact. *See Cypress/Spanish Ft. I, L.P. v. Prof'l Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 714 (N.D. Tex. 2011). Here, the enterprise that Plaintiff attempts to allege consists of three separate legal entities—Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., and Abilene Psychiatric Center Associates, LLC—and several

individuals who are either employees or corporate officers of one or more of the three legal entities—Joey A. Jacobs, Christopher L. Howard, David M. Duckworth, Brent Turner, Daniel Ryan Freshour, Duane C. Miller, John D. Crowley, and Tori Hicks.  Plaintiff alleges that this group of individuals and corporate entities formed an association-in-fact enterprise.

The Fifth Circuit has applied a three-part test to determine whether an alleged enterprise is indeed an association-in-fact for RICO purposes: (1) the enterprise must have an existence separate and apart from the pattern of racketeering, (2) the enterprise must have an ongoing organization, and (3) the members of the enterprise must function as a continuing unit as shown by a hierarchical or consensual decision making structure. *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

At the motion to dismiss stage, to satisfy the first element of the association-in-fact test, a plaintiff "must plead specific facts that establish an association that exists other than merely to commit the predicate acts." *Old Time Enterprises, Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217-18 (5th Cir. 1989).  Here, Plaintiff's First Amended Complaint asserts that the "enterprise was an association-in-fact of the conspiring Defendants."  The complaint goes on to allege that the purpose of the enterprise was to detain Plaintiff and other similarly situated individuals in order to carry out insurance fraud.  These conclusory assertions, even if true, would not establish that this collection of individuals and corporate entities had an existence separate and apart from the racketeering activity. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2010 WL 5105925, at *4 (N.D. Tex. Dec. 14, 2010) (finding that plaintiff had failed to plead facts showing that the enterprise was an entity separate and apart from the pattern of activity in which it engaged where plaintiff alleged that defendants had engaged in a pattern of racketeering activities and formed the enterprise with the purpose of selling life insurance policies).  All

Plaintiff has alleged is that there was an enterprise that engaged in the racketeering activities described in the First Amended Complaint—there are no facts suggesting that this enterprise existed separate and apart from those racketeering activities. *See Oblio Telecom, Inc. v. Patel*, CIV A 308-CV-0279-L, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) ("[plaintiff] must therefore plead specific facts that establish that the association exists for purposes other than simply to commit the predicate acts").

Plaintiff also fails to allege facts that, if true, would satisfy the second element of the association-in-fact test—that the enterprise was an ongoing organization. *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995). There are no facts describing the organization of the alleged enterprise or how the enterprise conducts its business of insurance fraud. *See Allstate Ins. Co. v. Donovan*, CIV.A. H-12-0432, 2012 WL 2577546, at *14 (S.D. Tex. July 3, 2012) (finding that plaintiff failed to plead facts sufficient to establish an ongoing organization where the complaint "lack[ed] factual allegations capable of establishing how the alleged [insurance fraud] scheme was formed, who—if anyone—was in charge, how each of the defendants participated in the alleged scheme . . . or whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud"). Furthermore, there are no facts that would show the enterprise is an ongoing organization that continues to detain other individuals besides Plaintiff for the purpose of effectuating insurance fraud. *See Goldin, Peiser & Peiser, L.L.P. v. Delta Brands, Inc.*, 3:02-CV-0127-M, 2002 WL 550450, at *3 (N.D. Tex. Apr. 11, 2002) (fact that association existed at one time is not sufficient—plaintiff must show that the organization continues to carry out the racketeering activities). Finally, Plaintiff fails to allege facts sufficient to satisfy the third element of the association-in-fact test—that the members of the enterprise functioned as a continuing unit as shown by a hierarchical or consensual decision making

structure. Plaintiff has failed to plead any facts relating to the decision-making structure of the alleged enterprise.

In sum, Plaintiff's lengthy First Amended Complaint is devoid of factual allegations which would establish both the existence of an enterprise and the commission of two or more predicate acts. Plaintiff has failed to allege facts which would, if true, establish a violation of 18 U.S.C. § 1962(c).

### 2.   *Violation of 18 U.S.C. § 1962(d)*

Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c). *See* 18 U.S.C. § 1962(d). Because Plaintiff has failed to state a claim against Defendants Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan Freshour, and Tori Hicks under section 1962(c), he has necessarily failed to state a claim for conspiracy to violate section 1962(c) under section 1962(d). *See Escamilla v. City of Dall.*, CIV.A. 303CV0848K, 2004 WL 1932867, at *5 (N.D. Tex. Aug. 30, 2004).

Plaintiff has failed to plead facts which would, if true, prove a violation of either section 1962(c) or section 1962(d). Thus, because Plaintiff has failed to plead a violation of one or more of the four subsections of 18 U.S.C. § 1962, he has failed to state a civil RICO claim under 18 U.S.C. § 1964(c) upon which relief can be granted. *See* 18 U.S.C. § 1964(c). Accordingly, the Court dismisses Plaintiff's civil RICO claims against Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Duane C. Miller, Daniel Ryan Freshour, and Tori Hicks.

### C.   *PLAINTIFF'S REMAINING STATE LAW CLAIMS*

When a plaintiff's federal claims have been dismissed under Fed. R. Civ. P. 12(b)(6), federal district courts have discretion in determining whether to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). "Where the federal

claims are dismissed before trial, however, the relevant factors weigh heavily in favor of dismissing the state law claims." *Holland v. GEXA Corp.*, 161 F. App'x 364, 366 (5th Cir. 2005); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585-86, 590 (5th Cir. 1992) (finding that the district court abused its discretion in maintaining supplemental jurisdiction over state law claims where the federal claims were dismissed early in the litigation).

Having dismissed Plaintiff's two federal causes of action—42 U.S.C. § 1983 and 18 U.S.C. § 1964(c)—the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Court thus dismisses Plaintiff's false imprisonment, intentional infliction of emotional distress, Texas Mental Health Code, and Texas Business and Commercial Code claims without prejudice. Plaintiff is free to refile these state law claims in Texas state court.

### D.  OUTRIGHT DISMISSAL VS. LEAVE TO AMEND

Generally, when a court dismisses a plaintiff's complaint under Fed. R. Civ. P. 12(b)(6), the court should give the plaintiff an opportunity to cure the defect by amending the complaint. *See* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend the pleadings] when justice so requires"); *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) ("[g]ranting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim"). Indeed, "district courts often afford

plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, however, this Court has already given Plaintiff an opportunity to amend his complaint to respond to and cure the deficiencies identified by the Defendants in their respective motions to dismiss. Despite providing this opportunity, Plaintiff's First Amended Complaint contains almost no new factual allegations and instead merely replaces some state statutory causes of action with state common law causes of action. Given the foregoing, the federal claims that the Court has dismissed in this order are hereby dismissed with prejudice and the Court will not grant Plaintiff leave to further amend his complaint. *See Paul v. Aviva Life & Annuity Co.*, 3:09-CV-1490-B, 2011 WL 2713649, at *10 (N.D. Tex. July 12, 2011), *aff'd*, 487 F. App'x 924 (5th Cir. 2012) (dismissing plaintiff's First Amended Complaint with prejudice because plaintiff had been granted two opportunities to state a claim and further amendment would be futile).

## CONCLUSION

Plaintiff's Motion to Strike is DENIED. Defendants' Motion to Dismiss is GRANTED. The following claims in Plaintiff's First Amended Complaint against Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Daniel Ryan Freshour, Tori Hicks, and Duane C. Miller are hereby DISMISSED WITH PREJUDICE: (1) Plaintiff's 42 U.S.C. § 1983 claim, and (2) Plaintiff's civil RICO claim under 18 U.S.C. §1964(c).

The following claims against Abilene Behavioral Health, LLC, Acadia Healthcare Company, Inc., Daniel Ryan Freshour, Tori Hicks, and Duane C. Miller are hereby DISMISSED WITHOUT PREJUDICE: (1) false imprisonment; (2) intentional infliction of emotional distress (3) violation of Tex. Bus. & Com. Code § 17.12; (4) violation of Tex. Bus. & Com. Code § 17.46(b)(2) & (3); (5) violation of Tex. Health & Safety Code § 573.025 & 576.006, and (6)

violation of Tex. Health & Safety Code § 576.025.   Plaintiff is free to refile these state law claims in Texas state court.

IT IS SO ORDERED.

Signed this _____ day of November, 2014.


_____
**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**